[No. S165906. Aug. 2, 2010.]

RANDAL D. HAWORTH et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SUSAN AMY OSSAKOW, Real Party in Interest.

COUNSEL

Schmid & Voiles, Suzanne De Rosa, Susan H. Schmid and Denise H. Greer for Petitioners.

Cole Pedroza, Curtis A. Cole, Joshua C. Traver and Ashfaq G. Chowdhury for California Medical Association, California Dental Association and California Hospital Association as Amici Curiae on behalf of Petitioners.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Bostwick & Associates, Bostwick Peterson & Mitchell, Jeffrey S. Mitchell; Dunn Koes, Brown Shenoi Koes, Shenoi Koes, Pamela E. Dunn, Mayo L. Makarczyk, Daniel J. Koes, Allan A. Shenoi and Michael R. Brown for Real Party in Interest.

Sharon J. Arkin for United Policyholders and JustHealth as Amici Curiae on behalf of Real Party in Interest.

OPINION

GEORGE, C. J.—The superior court vacated an arbitration award in a case involving the claim of a female patient that her physician was negligent in performing plastic surgery on her lip. The basis of the court's action was that the neutral arbitrator had failed to disclose a matter "that could cause a person aware of the facts to reasonably entertain a doubt that the . . . neutral arbitrator would be able to be impartial." (Code Civ. Proc., § 1281.9, subd. (a).)[1] The question before us is whether the neutral arbitrator, a former judge of the superior court, was required to disclose to the parties the circumstance that, 10 years earlier, he received a public censure based upon his conduct toward and statements to court employees, which together created "an overall courtroom environment where discussion of sex and improper ethnic and racial comments were customary." (*In re Gordon* (1996) 13 Cal.4th 472, 474 [53 Cal.Rptr.2d 788, 917 P.2d 627].) We conclude the arbitrator was not required to disclose this public censure, and therefore reverse the decision rendered by the Court of Appeal.

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

## I.

In 2003, petitioner Randal D. Haworth (Haworth), a medical doctor, performed cosmetic lip surgery upon real party in interest Susan Amy Ossakow (Ossakow). Subsequently, Ossakow filed an action against Haworth alleging battery and medical malpractice. Based upon an arbitration agreement, the parties stipulated to binding arbitration of Ossakow's claims. That agreement provided for a panel of arbitrators composed of one arbitrator selected by each party and a neutral arbitrator jointly chosen in turn by those two arbitrators.

Both parties agreed to the appointment of retired Los Angeles County Superior Court Judge Norman Gordon as the neutral arbitrator. In his disclosure statement, required by section 1281.9, Judge Gordon stated that he had been involved in legal proceedings with other members of defense counsel's firm, but had no other information to report.

At the arbitration hearing, Ossakow, who previously had undergone several other cosmetic surgeries performed by various physicians, contended that she had not consented to the particular surgical procedure employed by Haworth, that the use of that procedure fell below the standard of care, and that the procedure had caused her numerous problems, including stiffness and numbness in her lips and an asymmetrical smile. The panel, in a split decision authored by Judge Gordon, issued its award in favor of Haworth. In written findings, the arbitrators concluded that Ossakow had not established lack of consent by a preponderance of the evidence, noting that the testimony of the two parties was in conflict concerning whether Ossakow had been informed regarding the surgical procedure to be employed. The arbitrators also concluded that Haworth's use of the selected surgical procedure did not fall below the standard of care, noting that the medical experts of the two parties disagreed on the standard of care, that even Ossakow's expert was equivocal on the question of causation, and that the testimony of Haworth's expert regarding the standard of care and causation was more compelling.

Two months later, in April of 2007, Ossakow learned that in 1996, Judge Gordon, who was appointed to the trial bench in 1983, had been publicly censured by this court for engaging in " 'conduct prejudicial to the administration of justice that brings the judicial office into disrepute.' " (*In re Gordon*, *supra*, 13 Cal.4th at p. 473, quoting Cal. Const., art. VI, former § 18, subd. (c)(2).) This court had adopted the findings of the Commission on Judicial Performance "that between April of 1990 and October 27, 1992, Judge Gordon on several occasions made sexually suggestive remarks to and asked sexually explicit questions of female staff members; referred to a staff member using crude and demeaning names and descriptions and an ethnic

slur; referred to a fellow jurist's physical attributes in a demeaning manner; and mailed a sexually suggestive postcard to a staff member addressed to her at the courthouse. None of the conduct occurred while court was in session or while the judge was on the bench conducting the business of the court. [¶] . . . While the actions were taken in an ostensibly joking manner and there was no evidence of intent to cause embarrassment or injury, or to coerce, to vent anger, or to inflict shame, the result was an overall courtroom environment where discussion of sex and improper ethnic and racial comments were customary." (*Id.*, at pp. 473–474.)[2]

Ossakow filed a petition in the superior court seeking to vacate the arbitration award on the ground, among others, that Judge Gordon had failed to disclose this public censure. That court vacated the award, concluding "a reasonable person would question whether he could be impartial in this case." Haworth filed a petition for writ of mandamus to reinstate the award,[3] which the Court of Appeal denied in a summary order. This court granted review and transferred the matter back to the appellate court with directions to issue an alternative writ of mandate.

---

[2] The only evidence of the conduct underlying Judge Gordon's public censure that was admitted in the superior court in the present proceedings is the text of this court's decision in *In re Gordon, supra*, 13 Cal.4th 472.

The dissenting opinion relies upon additional factual material not discussed in our opinion. (Dis. opn., *post*, at pp. 396–397.) Justice Werdegar would take judicial notice of the record in the censure case, including the factual findings of the Commission on Judicial Performance. (Dis. opn. *post*, at pp. 396–397, fn. 1.) In contrast to the cases cited in the dissenting opinion, however, in the present case the parties have not asked us to take judicial notice of these records. Ossakow did not submit these records to the trial court in connection with her petition to vacate the arbitration award, and the trial court made its ruling based upon the facts set forth in our opinion. "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court" absent exceptional circumstances. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) "It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered. [Citation.] This rule preserves an orderly system of [litigation] by preventing litigants from circumventing the normal sequence of litigation." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 [180 Cal.Rptr. 628, 640 P.2d 764].) No exceptional circumstances appear that would justify deviating from this general rule in the present case, particularly in the absence of a request for judicial notice by either of the parties. (See, e.g., *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 [48 Cal.Rptr.2d 87, 906 P.2d 1242] [declining to take judicial notice of records of an arbitration proceeding because "the State Bar puts forth no reason for its failure to request the trial court and Court of Appeal to take judicial notice . . ."].) Moreover, to take judicial notice of additional records at this stage of the litigation would deprive the parties of any opportunity to respond, either by offering additional evidence or by tailoring their arguments to address these new facts. Therefore, we rely solely upon the evidence that was presented to and considered by the trial court.

[3] An order vacating an arbitration award is appealable only if it does not order a rehearing in arbitration. (§ 1294, subd. (c).) The superior court's order in the present case directed that a new arbitration proceeding be conducted, and thus was not appealable.

After issuing the writ, the Court of Appeal filed an opinion denying the petition. In its opinion, the appellate court concluded that there was a conflict in the law concerning the correct standard of review, but that there was no need to resolve the conflict, because its decision would be the same whether the superior court's order vacating the award was reviewed de novo or under a substantial-evidence standard. The appellate court rejected Haworth's argument that no disclosure was required because the censure was a matter of public record. It framed the question as "whether an ' "average person on the street" ' aware of the facts would harbor doubts as to the arbitrator's impartiality." (Quoting *United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 104 [216 Cal.Rptr. 4] (*United Farm Workers*).) The Court of Appeal concluded that because Judge Gordon was publicly censured in part for "disparaging female associates based on their physical attributes," "a person aware of Judge Gordon's censure might reasonably entertain a doubt as to his ability to be impartial in a case involving a woman's cosmetic surgery."

## II.

■ The California Arbitration Act (§ 1280 et seq.) "represents a comprehensive statutory scheme regulating private arbitration in this state." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).) The statutory scheme reflects a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 322 [197 Cal.Rptr. 581, 673 P.2d 251].) "[I]t is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh, supra,* 3 Cal.4th at p. 9.)

Generally, in the absence of a specific agreement by the parties to the contrary, a court may not review the merits of an arbitration award. (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1344–1345 [82 Cal.Rptr.3d 229, 190 P.3d 586].) Although the parties to an arbitration agreement accept some risk of an erroneous decision by the arbitrator, "the Legislature has reduced the risk to the parties of such a decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh, supra,* 3 Cal.4th at p. 12; see §§ 1286.2 [grounds for vacation of award], 1286.6 [grounds for correction of award].)

 The statutory scheme, in seeking to ensure that a neutral arbitrator[4] serves as an impartial decision maker, requires the arbitrator to disclose to the parties any grounds for disqualification. Within 10 days of receiving notice of his or her nomination to serve as a neutral arbitrator, the proposed arbitrator is required, generally, to "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." (§ 1281.9, subd. (a).) Based upon these disclosures, the parties are afforded an opportunity to disqualify the proposed neutral arbitrator. (§ 1281.91, subds. (b), (d).) If an arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware," the trial court must vacate the arbitration award. (§ 1286.2, subd. (a)(6)(A).)

 The applicable statute and standards enumerate specific matters that must be disclosed. The arbitrator must disclose specified relationships between the arbitrator and the parties to the arbitration, including involvement in prior arbitrations, an attorney-client relationship with any attorney involved in the arbitration, and any significant personal or professional relationship with a party or an attorney involved in the arbitration. (§ 1281.9, subd. (a)(3)–(6).) The arbitrator also must disclose "any ground specified in Section 170.1 for disqualification of a judge," as well as "matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council." (§ 1281.9, subd. (a)(1), (2); see Cal. Rules of Court, Ethics Stds. for Neutral Arbitrators in Contractual Arbitration (Ethics Standards).) The Ethics Standards require the disclosure of "specific interests, relationships, or affiliations" and other "common matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial." (Ethics Stds., com. to std. 7.) Specific matters that must be disclosed include, for example, the arbitrator's financial interest in a party or the subject of the arbitration, the arbitrator's knowledge of disputed facts relevant to the arbitration, and the arbitrator's "membership in any organization that practices invidious discrimination on the basis of race, sex, religion, national origin, or sexual orientation." (Ethics Stds., std. 7(d)(13); see id., std. 7(d)(9), (10), (12).)

Neither the statute nor the Ethics Standards require that a former judge or an attorney serving as an arbitrator disclose that he or she was the subject of any form of professional discipline. At issue here is the general requirement that the arbitrator disclose any matter that reasonably could create the appearance of partiality.

---

[4] " 'Neutral arbitrator' means an arbitrator who is (1) selected jointly by the parties or by the arbitrators selected by the parties or (2) appointed by the court when the parties or the arbitrators selected by the parties fail to select an arbitrator who was to be selected jointly by them." (§ 1280, subd. (d).)

## A.

In the Court of Appeal, both parties suggested that the superior court's order vacating the arbitration award, based upon Judge Gordon's failure to disclose the public censure, should be reviewed under a de novo standard because the facts were not in dispute. The Court of Appeal's opinion stated that although some cases have applied this standard to such review when the facts were not in dispute,[5] the weight of authority supports application of a substantial-evidence standard even when the facts are undisputed, treating the question of whether the circumstances of the case require disclosure as a factual determination for the superior court.[6] As noted above, the Court of Appeal declined to resolve this question, concluding that its decision would be the same under either standard. We asked the parties to brief the issue.

Haworth contends that there is no dispute concerning the facts, that the superior court's decision that disclosure was required poses a mixed question of fact and law, and that mixed questions should be reviewed de novo. Ossakow contends that the facts are in dispute and that, in any event, the abuse-of-discretion standard should apply; her position is that the superior court's decision should be upheld if its factual findings are supported by substantial evidence and its application of the law to the facts is not arbitrary or capricious.[7]

---

[5] The Court of Appeal cited two cases that determined a de novo standard of review applies when the facts are not in dispute, *Casden Park La Brea Retail LLC v. Ross Dress for Less, Inc.* (2008) 162 Cal.App.4th 468, 476, footnote 7 [75 Cal.Rptr.3d 763], and *Betz v. Pankow* (1995) 31 Cal.App.4th 1503, 1508 [38 Cal.Rptr.2d 107].

[6] The Court of Appeal cited the following cases, which apply a more deferential standard of review: *Luce, Forward, Hamilton & Scripps, LLP v. Koch* (2008) 162 Cal.App.4th 720, 734 [75 Cal.Rptr.3d 869] (whether the arbitrator had a duty to disclose information is a question of fact subject to deferential review); *Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 957 [51 Cal.Rptr.3d 903] (concluding "substantial evidence supported the trial court's conclusion [that] disclosure was not required . . ."); *Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1365 [131 Cal.Rptr.2d 524] ("whether the arbitrators had a duty to disclose information . . . which might indicate bias, is a question of fact. Our review as to that issue is deferential."); *Michael v. Aetna Life & Casualty Ins. Co.* (2001) 88 Cal.App.4th 925, 931, 933 [106 Cal.Rptr.2d 240] (whether a particular relationship requires disclosure is a question of fact for the trial court, whose decision is reviewed for substantial evidence). (See also *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1105–1106 [9 Cal.Rptr.3d 286] (dis. opn. of Grignon, J.) [concluding that substantial evidence supported the trial court's finding that no person apprised of the facts could reasonably conclude the arbitrator could not be impartial].)

[7] The only case cited by Ossakow that applied an abuse-of-discretion standard in reviewing a trial court's vacation of an arbitration award, based upon an arbitrator's failure to disclose, is *Kaiser Foundation Hospitals, Inc. v. Superior Court* (1993) 19 Cal.App.4th 513 [23 Cal.Rptr.2d 431]. The appellate court in that matter did not analyze the issue of which standard of review was applicable; it merely stated in a summary manner that the superior court's decision "did not constitute an abuse of discretion." (*Id.*, at p. 518.)

In the context of a claim that an arbitrator exceeded his or her powers, we have stated that the superior court's decision is subject to de novo review. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 [36 Cal.Rptr.2d 581, 885 P.2d 994].) We have not addressed the standard applicable to review of the superior court's decision when the award has been challenged in that court on the ground that the arbitrator failed to disclose circumstances creating an appearance of partiality.[8] For the reasons discussed below, we conclude that the superior court's order should be reviewed de novo.

As a threshold matter, the material facts are not in dispute. The wording of Judge Gordon's public censure and the underlying information Ossakow contends should have been disclosed by him are set out in this court's earlier opinion and are not in dispute. (*In re Gordon, supra,* 13 Cal.4th 472.) Ossakow attempts to support her assertion that factual disputes exist in the present case by citing her declaration, filed in the superior court, in which she stated she would not have agreed to have Judge Gordon serve as an arbitrator had she known he had been publicly censured for demeaning and degrading treatment of women. Haworth does not dispute the truth of Ossakow's statement but, in any event, the statement is not material. In the event Ossakow establishes that Judge Gordon failed to make a required disclosure, she is entitled to vacation of the arbitration award without any showing she was prejudiced by the nondisclosure. (See § 1286.2, subd. (a)(6)(A).)

Ossakow also cites, as an assertedly disputed fact, the superior court's conclusion that a statement in the arbitration award constituted "at least some

---

[8] Because the rule for disclosure by a neutral arbitrator under section 1281.9, subdivision (a) is the same as the rule for disqualification of a judge under section 170.1, subdivision (a)(6)(A)(iii), case law applicable to judicial disqualification is potentially relevant to the present case. Our decisions, however, have not fully resolved, in the analogous context of judicial recusal, the issue of which standard of review applies to a determination involving the appearance of partiality. We stated in *People v. Alvarez* (1996) 14 Cal.4th 155, 237 [58 Cal.Rptr.2d 385, 926 P.2d 365], that generally, "an appellate court reviews a trial court's ruling on a recusal motion for abuse of discretion." *Alvarez,* however, does not appear to have been cited by this court or the Courts of Appeal on this point. An earlier case, *People v. Brown* (1993) 6 Cal.4th 322, 336–337 [24 Cal.Rptr.2d 710, 862 P.2d 710], has been cited for the proposition that a trial court's ruling on a motion to disqualify a judge is reviewed de novo. (See *Flier v. Superior Court* (1994) 23 Cal.App.4th 165, 171 [28 Cal.Rptr.2d 383].) Although our opinion in *People v. Brown* does not express deference to the trial court's ruling, it does not explicitly set forth any standard of review. Some appellate courts have stated, with minimal analysis, that the question of whether a judge should have been disqualified because of an appearance of partiality is a question of law, reviewable de novo, where the facts are not in dispute. (See, e.g., *Briggs v. Superior Court* (2001) 87 Cal.App.4th 312, 319 [104 Cal.Rptr.2d 445] ["On undisputed facts this is a question of law for independent appellate review."]; *Sincavage v. Superior Court* (1996) 42 Cal.App.4th 224, 230 [49 Cal.Rptr.2d 615] ["Where, as here, the underlying events are not in dispute, disqualification on this ground becomes a question of law which this court may determine."].)

evidence" that the award was influenced by gender bias. The statement to which the superior court referred was the following: "One thing probably everyone can agree upon, after five facial surgeries, she could have done without the sixth one." The court referred to this statement as "gratuitous" and cited it in support of its ruling that, in proceeding with a new arbitration, the parties should select three new arbitrators, and not merely a replacement for Judge Gordon.[9] Although Haworth disputes whether this statement by Judge Gordon constitutes evidence of bias, that is not a material issue in this case. In order to prevail under section 1286.2, subdivision (a)(6)(A), Ossakow is not required to prove that Judge Gordon actually was influenced by bias. Instead, the sole issue is whether, at the time he was required to make any disclosures—that is, within 10 days of his nomination to serve as a neutral arbitrator—Judge Gordon should have disclosed information regarding the public censure. His later statement was immaterial to the question of whether knowledge of the public censure could cause a person to reasonably entertain a doubt whether Judge Gordon could be impartial.

In *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881 [264 Cal.Rptr. 139, 782 P.2d 278] (*Crocker*), we set forth the general principles governing the selection of a standard of appellate review. "Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test. Questions of law relate to the selection of a rule; their resolution is reviewed independently. Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently. [Citation.]" (*Id.,* at p. 888.)

Here, the facts are not in dispute, nor is the applicable rule of law. The question of whether Judge Gordon was required to disclose the public censure involves the application of the rule to the facts, making it a mixed question of law and fact. Selection of the appropriate standard of review for mixed questions is influenced by concerns of judicial administration— " 'efficiency, accuracy, and precedential weight.' " (*People v. Louis* (1986) 42 Cal.3d 969, 986–987 [232 Cal.Rptr. 110, 728 P.2d 180].) If those concerns " 'make it more appropriate for a [trial] judge to determine whether the established facts fall within the relevant legal definition, we should subject

---

[9] The superior court did not find actual bias justifying vacation of the award, and Ossakow does not take the position that the trial court's order should be upheld because Judge Gordon was actually biased against her.

[the trial judge's] determination to deferential . . . review. If, on the other hand, the concerns of judicial administration favor the appellate court, we should subject the [trial] judge's finding to de novo review.' " (*Id.*, at p. 987, quoting *U.S. v. McConney* (9th Cir. 1984) 728 F.2d 1195, 1202.) Deference is given to the factual findings of trial courts because those courts generally are in a better position to evaluate and weigh the evidence. (*People v. Louis, supra*, 42 Cal.3d at p. 986.) The Courts of Appeal, on the other hand, are in a better position to resolve legal issues, because " 'appellate judges are freer to concentrate on legal questions' " and the judgment of three or more judges is brought to bear in every case. (*Ibid.*, quoting *U.S. v. McConney, supra*, 728 F.2d at p. 1201.) Furthermore, factual determinations generally are of concern only to the litigants, whereas appellate decisions provide controlling precedent for future cases. " 'From the standpoint of sound judicial administration, therefore, it makes sense to concentrate appellate resources on ensuring the correctness of determinations of law.' " (*People v. Louis*, at p. 986, quoting *U.S. v. McConney, supra*, 728 F.2d at p. 1201.)

We previously have observed that in most instances, mixed questions of fact and law are reviewed de novo—with some exceptions, such as when the applicable legal standard provides for a " 'strictly factual test, such as state of mind.' " (*People v. Louis, supra*, 42 Cal.3d at p. 987, fn. 4, quoting *U.S. v. McConney, supra*, 728 F.2d at p. 1203.) " 'This is so because usually the application of law to fact will require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles.' " (*People v. Louis, supra*, 42 Cal.3d at p. 987, quoting *U.S. v. McConney, supra*, 728 F.2d at p. 1202.)

In *Crocker*, we held that the issue of whether an individual computer component represents a "fixture" for property-tax purposes must be reviewed independently on appeal. We explained that although our inquiry involved factual determinations, the question remained predominantly legal. (*Crocker, supra*, 49 Cal.3d at pp. 884, 888.) "[T]he pertinent inquiry bears on the various policy considerations implicated in the solution of the problem of taxability, and therefore requires a critical consideration, in a factual context, of legal principles and their underlying values." (*Id.*, at p. 888.) Moreover, we concluded that independent review fosters appropriate uniformity in the application of tax laws. (*Id.*, at pp. 888–889.)

Whether Judge Gordon was required to disclose the public censure is a mixed question of fact and law that should be reviewed de novo. The applicable rule provides an objective test by focusing on a hypothetical reasonable person's perception of bias. The question is not whether Judge Gordon actually was biased or even whether he was likely to be impartial; those questions involve a subjective test that appropriately could be characterized as primarily factual. The question here is how an objective, reasonable

person would view Judge Gordon's ability to be impartial. (See, e.g., *Ornelas v. United States* (1996) 517 U.S. 690, 697 [134 L.Ed.2d 911, 116 S.Ct. 1657] [trial court's determinations of reasonable suspicion and probable cause in the context of the 4th Amend. to the U.S. Const., based on the viewpoint of a reasonable police officer, are reviewed de novo]; *Crocker, supra,* 49 Cal.3d at pp. 887–888 [classification, for purposes of property tax, of an item of equipment as a fixture depends upon whether a reasonable person would consider the item to constitute a permanent part of the building—an issue to be reviewed de novo].)

The concerns of judicial administration noted in *People v. Louis, supra,* 42 Cal.3d at page 986 (efficiency, accuracy, and precedential weight), militate in favor of de novo review. In ruling on a petition to vacate an arbitration award, the superior court is itself reviewing a decision by the arbitrator not to disclose, based upon the facts known to the arbitrator at the time required for disclosure. That court is in no better position than an appellate court to resolve the question of whether a reasonable person would doubt the arbitrator's ability to be impartial. Additionally, in the appellate court, three judges bring their expertise to bear on the issue, increasing the likelihood of accurate decisions.

Furthermore, although the application of the appearance-of-partiality test does depend upon the facts and circumstances of each case, de novo review—through the establishment of appellate precedent—will promote consistency in the interpretation and application of the disclosure requirement. The United States Supreme Court has held that a trial court's application of the law to the facts in determining whether reasonable suspicion and probable cause exist, in the context of a claimed violation of the Fourth Amendment to the United States Constitution, should be reviewed de novo, even though these legal principles cannot be reduced to simple rules; they involve "fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed." (*Ornelas v. United States, supra,* 517 U.S. at p. 696.) The high court concluded that independent review would clarify the applicable legal principles and provide guidance to law enforcement that would tend to assist officers in making a correct determination in advance as to whether an invasion of privacy is justified. (*Id.,* at pp. 697–698.)

Similar reasoning supports de novo review in the present case. The appearance-of-partiality standard is a "fluid concept" that takes its substance from context and cannot be reduced to simple legal rules. Nevertheless, application of a de novo standard of review will further the development of a uniform body of law and clarify the applicable legal principles, guiding arbitrators in their decisions as to which matters must be disclosed. Such

guidance from appellate courts will further the public policy of finality of arbitration awards by reducing the likelihood that an award will be vacated because of an arbitrator's erroneous failure to disclose.

Ossakow, citing cases involving motions to disqualify a prosecutor because of a conflict of interest, insists that the standard of review should be whether there has been an abuse of discretion. (See *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 709 [76 Cal.Rptr.3d 250, 182 P.3d 579] (*Haraguchi*); *People v. Vasquez* (2006) 39 Cal.4th 47, 56 [45 Cal.Rptr.3d 372, 137 P.3d 199]; *Hambarian v. Superior Court* (2002) 27 Cal.4th 826, 834 [118 Cal.Rptr.2d 725, 44 P.3d 102].) In ruling on such a recusal motion, a trial court must determine whether the evidence demonstrates a conflict of interest and whether the conflict is so severe as to warrant recusal. (*Hambarian*, at p. 833.) The trial court's ruling is reviewed under the abuse-of-discretion standard; factual findings are reviewed for substantial evidence, conclusions of law are reviewed de novo, and "application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi, supra*, 43 Cal.4th at pp. 711–712.)

The reasons that justify a deferential standard of review in cases involving recusal of a prosecuting attorney are not persuasive in the present context. First, the statute governing disqualification of a prosecuting attorney, Penal Code section 1424, "demands a showing of a real, not merely apparent, potential for unfair treatment." (*People v. Vasquez, supra*, 39 Cal.4th at p. 56.) The application of that test appropriately is characterized as primarily factual. In contrast, deciding whether an appearance of partiality exists requires application of an objective, reasonable-person test. Second, as we noted in *Haraguchi*, a trial court has "broad discretion to protect against procedural unfairness by ordering pretrial recusals [of the district attorney]." (*Haraguchi, supra*, 43 Cal.4th at p. 712.) In contrast, a trial court does not have broad discretion to vacate an arbitration award. The court can vacate such an award only on the grounds authorized by statute, and if the circumstances justifying vacation are found to exist, the court "shall vacate the award." (§ 1286.2, subd. (a).) A standard of review that affords the trial court broad discretion would tend to undermine the policy favoring the finality of arbitration. (See *Advanced Micro Devices, Inc. v. Intel Corp., supra*, 9 Cal.4th at p. 376 & fn. 9 [because the arbitrator has substantial discretion in determining the scope of his or her powers, the reviewing court affords deference to the decision of the arbitrator but reviews de novo an order of the trial court].)[10]

[10] Ossakow also cites cases addressing a trial court's decision to disqualify a party's attorney in a civil case because of a conflict of interest—cases in which we have stated that the trial court's decision generally is reviewed for abuse of discretion. (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 848 [43 Cal.Rptr.3d 771, 135 P.3d

■ Finally, as we explained in *Haraguchi*, "[w]e review rulings on motions to recuse [the district attorney] only for abuse of discretion precisely because trial courts are in a better position than appellate courts to assess witness credibility, make findings of fact, and evaluate the consequences of a potential conflict in light of the entirety of a case, a case they inevitably will be more familiar with than the appellate courts that may subsequently encounter the case in the context of a few briefs, a few minutes of oral argument, and a cold and often limited record." (*Haraguchi, supra,* 43 Cal.4th at p. 713.) Consequently, we concluded that de novo review of motions to recuse the district attorney would not increase the accuracy of such determinations. (*Ibid.*) As noted above, a trial court reviewing an arbitrator's decision does not enjoy the advantage the court has in ruling on a motion to recuse a prosecutor. We conclude that employment of a de novo standard of review for issues concerning arbitrator disclosure will assist in ensuring both consistency in the law and finality of arbitration awards, without sacrificing accuracy in those determinations.[11]

## B.

■ At issue in the present case is the requirement that an arbitrator disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." (§ 1281.9, subd. (a).) An arbitrator's duty to disclose arises under the same circumstances that give rise to a judge's duty to recuse, that is, if "[f]or any reason . . . [¶] . . . [¶] . . . [a] person aware of the facts

---

20]; *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 [86 Cal.Rptr.2d 816, 980 P.2d 371].) Because, as discussed above, the trial court lacks discretion to vacate an arbitration award, these cases are inapplicable here. Even if they did apply, they do not support Ossakow's contention that the superior court's order should be reviewed under an abuse-of-discretion standard. These cases concluded that because no material disputed factual issues exist, the trial court's decision should be reviewed as a question of law, that is, de novo. (*City and County of San Francisco v. Cobra Solutions, Inc., supra,* 38 Cal.4th at p. 848 [reviewing as a question of law the trial court's legal conclusion that the city attorney's personal conflict of interest should be imputed to the entire office]; *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at p. 1144 [stating that when no material disputed factual issues exist, the trial court's determination is reviewed as a question of law, and observing that "[i]n any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion"].)

[11] Amici curiae California Medical Association, California Dental Association, and California Hospital Association argue that, although the ultimate question—of whether a reasonable person with knowledge of particular facts would doubt the arbitrator's ability to be impartial—should be reviewed de novo, both the superior court and the appellate court should accord substantial deference to the *arbitrator's* decision by assuming the facts in the light most favorable to the arbitrator's determination that he or she had no duty to disclose. Because the relevant facts are not in dispute, we have no need to address this argument in the present case.

might reasonably entertain a doubt that the judge would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii).) As noted above, because the standard for disclosure by a neutral arbitrator under section 1281.9, subdivision (a) is the same as the standard for disqualification of a judge under section 170.1, subdivision (a)(6)(A)(iii), case law applicable to judicial disqualification is relevant to the present case.

"Impartiality" entails the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind." (ABA Model Code Jud. Conduct (2007), Terminology, p. 4.) In the context of judicial recusal, "[p]otential bias and prejudice must clearly be established by an objective standard." (*People v. Chatman* (2006) 38 Cal.4th 344, 363 [42 Cal.Rptr.3d 621, 133 P.3d 534]; see *In re Scott* (2003) 29 Cal.4th 783, 817 [129 Cal.Rptr.2d 605, 61 P.3d 402].) "Judges, like all human beings, have widely varying experiences and backgrounds. Except perhaps in extreme circumstances, those not directly related to the case or the parties do not disqualify them." (*People v. Chatman, supra*, 38 Cal.4th at p. 364.)

In interpreting a comparable provision of the federal law requiring recusal of a judge when his or her "impartiality might reasonably be questioned" (28 U.S.C. § 455(a)), federal courts have stated that the appearance-of-partiality "standard 'must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.' " (*U.S. v. Holland* (9th Cir. 2008) 519 F.3d 909, 913, quoting *U.S. v. Cooley* (10th Cir. 1993) 1 F.3d 985, 993.) "The 'reasonable person' is not someone who is 'hypersensitive or unduly suspicious,' but rather is a 'well-informed, thoughtful observer.' " (*U.S. v. Holland, supra*, 519 F.3d at p. 913, quoting *In re Mason* (7th Cir. 1990) 916 F.2d 384, 386.) "[T]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard." (*United Farm Workers, supra*, 170 Cal.App.3d at p. 106, fn. 6, italics added; accord, *Leland Stanford Junior University v. Superior Court* (1985) 173 Cal.App.3d 403, 408 [219 Cal.Rptr. 40].)

"An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason*." (*Betz v. Pankow, supra*, 31 Cal.App.4th at p. 1511, italics added.) Ossakow contends, and the Court of Appeal held, that Judge Gordon's public censure would cause a person to reasonably conclude that this arbitrator might be biased against a female plaintiff in a medical malpractice case involving cosmetic surgery. We disagree. Judge Gordon was publicly censured, in relevant part, because he "made sexually suggestive remarks to and asked sexually explicit questions

of female staff members" and mailed a sexually suggestive postcard to a female staff member. (*In re Gordon, supra,* 13 Cal.4th at pp. 473–474.) Additionally, Judge Gordon used "crude and demeaning names and descriptions and an ethnic slur" in conversing with one staff member, and referred to the "physical attributes" of a fellow jurist "in a demeaning manner." (*Id.,* at p. 474.) His conduct resulted in "an overall courtroom environment where discussion of sex and improper ethnic and racial comments were customary." (*In re Gordon,* at p. 474.) This type of conduct is clearly inappropriate; it is disrespectful toward staff members and tends to create an offensive work environment.

Nevertheless, nothing in the public censure would suggest to a reasonable person that Judge Gordon could not be fair to female litigants, either generally or in the context of an action such as the one now before us. His "actions were taken in an ostensibly joking manner and there was no evidence of intent to cause embarrassment or injury, or to coerce, to vent anger, or to inflict shame." (*In re Gordon, supra,* 13 Cal.4th at p. 474.) The conduct that was the subject of the public censure occurred between April of 1990 and October of 1992, more than 15 years prior to the arbitration proceeding. None of the conduct or comments for which Judge Gordon was censured involved litigants or occurred in the courtroom while court was in session. (*Ibid.*) In determining the level of discipline appropriate for a particular act of judicial misconduct, "[o]ur role is to determine, in the individual case, the action necessary to protect the public and the reputation of the judiciary." (*Kloepfer v. Commission on Judicial Performance* (1989) 49 Cal.3d 826, 867 [264 Cal.Rptr. 100, 782 P.2d 239] (*Kloepfer*).) Had this court concluded that Judge Gordon was unable to be fair to female litigants generally, public censure—which permitted him to continue to sit as a judge—would have been an inadequate form of discipline.[12] (See *Adams v. Commission on Judicial Performance* (1995) 10 Cal.4th 866, 912 [42 Cal.Rptr.2d 606, 897 P.2d 544] [noting that cases resulting in permanent removal of a judge from office generally have involved a pattern of inappropriate conduct while the judge is on the bench or otherwise performing judicial duties, or an abuse of judicial powers and authority].)

█ Furthermore, implicit in a determination that public censure, rather than permanent removal from office, will be sufficient to protect the public is the expectation that the judge will respond to the censure by ceasing to

---

[12] Judge Gordon was publicly censured for "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." (Cal. Const., art. VI, § 18, subd. (d).) Such conduct can constitute grounds for removal. (*Ibid.*)

engage in the conduct that resulted in the disciplinary action. (See *Kloepfer*, *supra*, 49 Cal.3d at p. 866 [judge removed from the bench when "[t]he record does not suggest that [the judge] has, or will be able to, overcome this trait [(lack of judicial temperament)] and that similar incidents will not recur"].) A person aware of all the circumstances of Judge Gordon's public censure—including this court's conclusion that there was no evidence suggesting that he acted with any intent to harm or that any of his misconduct involved litigants before the court—could not reasonably entertain a doubt concerning his ability to be fair to female litigants even at the time his misconduct involving court personnel took place. Even less so could a reasonable person conclude that Judge Gordon was unaffected by the discipline imposed and could not be fair to female litigants at the time of the arbitration proceeding—at least in the absence of any evidence of gender bias on his part in the intervening 10 years following the public censure.

More specifically, the circumstances underlying the public censure would not suggest to a reasonable person that Judge Gordon's conduct and attitude toward women would cause him to favor a male physician over a female patient in a case in which the appearance of the patient who underwent cosmetic surgery instead was worsened. Although the Court of Appeal characterized Judge Gordon's conduct as "disparaging women on account of their physical attributes," our opinion mentions only one incident involving a person's appearance, in which he "referred to a fellow jurist's physical attributes in a demeaning manner," and the opinion does not specify the gender of the jurist. (*In re Gordon*, *supra*, 13 Cal.4th at p. 474.) Even assuming the jurist was a woman, any number of speculative inferences might be made about Judge Gordon's attitudes based upon that conduct. For example, one might infer from that conduct that Judge Gordon valued a woman's physical attributes over other attributes that are more relevant to the workplace. Even so, that inference says nothing about what his attitude might be toward a woman who is suing her physician for negligence in performing plastic surgery, much less about whether Judge Gordon could put those attitudes aside and decide the case fairly, based upon the evidence received. One might just as well speculate that a man who values physical attractiveness in women might be more sympathetic toward the female patient in such a situation. Such an inference would be no less speculative than the inference that he would be more sympathetic toward the male physician. Judge Gordon's public censure simply provides no reasonable basis for a belief that he would be inclined to favor one party over the other in the present proceedings.

Unlike cases in which evidence of gender bias has required disqualification of a judge, the subject matter of this arbitration was not such that the circumstance of gender was material, or that gender stereotyping was likely to enter into the decision made by the arbitrators. For example, in *Catchpole v. Brannon* (1995) 36 Cal.App.4th 237 [42 Cal.Rptr.2d 440], the Court of

Appeal reversed a judgment for the employer in a sexual harassment case because of comments made by the judge that suggested gender bias. The court noted that "judicial gender bias appears most likely to arise in litigation in which gender is material, such as sexual harassment and discrimination cases." (*Id.*, at p. 248, citing Judicial Council of Cal., Achieving Equal Justice for Women and Men in the Courts: The Draft Rep. of the Judicial Council Advisory Committee on Gender Bias in the Courts (1990) pp. 24–25.) The appellate court noted in *Catchpole* that the trial judge's "conception of the circumstances that may constitute sexual harassment [was] based on stereotyped thinking about the nature and roles of women and myths and misconceptions about the economic and social realities of women's lives. The average person on the street might therefore justifiably doubt whether the trial in this case was impartial." (*Catchpole v. Brannon, supra*, 36 Cal.App.4th at p. 262.) Similarly, in *In re Marriage of Iverson* (1992) 11 Cal.App.4th 1495, 1498–1501 [15 Cal.Rptr.2d 70], the appellate court reversed a judgment in a marital dissolution case because the judge employed language, in referring to the wife, that reflected gender bias (describing her as a "girl") and because his statement of grounds for decision reflected "an obvious double standard based on stereotypical sex roles." (*Id.*, at p. 1500.)[13]

Ossakow contends that in two respects the standard governing arbitrator disclosure should be broader than the standard applicable to judicial recusal. First, she argues that all doubts should be resolved in favor of disclosure. Second, she argues that "[t]he 'person' referenced in this disclosure requirement concerning partiality is not necessarily an objective, reasonable person." She appears to suggest that the question be viewed from the *party's* perspective, concluding that "a person such as Ms. Ossakow *might* reasonably entertain a doubt as to Judge Gordon's ability to be impartial in the present case."

■ Clearly, some of the policies applicable in the context of judicial recusal may differ from those applicable to arbitrator disclosure. A judge, unlike a proposed neutral arbitrator, "has a duty to decide any proceeding in which he or she is not disqualified." (§ 170.) " 'Judicial responsibility does not require shrinking every time an advocate asserts the objective and fair judge *appears* to be biased. The duty of a judge to sit where not disqualified is equally as strong as the duty not to sit when disqualified.' " (*People v. Carter* (2005) 36 Cal.4th 1215, 1243 [32 Cal.Rptr.3d 838, 117 P.3d 544], quoting *United Farm Workers, supra*, 170 Cal.App.3d at p. 100.) A proposed neutral arbitrator has no comparable duty to serve.

---

[13] Had the subject of the arbitration in the present case involved, for example, workplace sexual harassment, we might have come to a different conclusion concerning Judge Gordon's obligation to disclose the public censure. Arbitration of such a case might have required Judge Gordon to pass judgment on allegations of misconduct similar to the acts he himself was found to have committed.

The circumstance that the arbitrator's decision normally is not reviewable for legal error may weigh in favor of broad disclosure to ensure a fair proceeding. The United States Supreme Court has observed that "we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." (*Commonwealth Corp. v. Casualty Co.* (1968) 393 U.S. 145, 149 [21 L.Ed.2d 301, 89 S.Ct. 337]; see also *id.*, at p. 152 (conc. opn. of White, J.) [arbitrators should err on the side of disclosure].)

■ Despite some differences between the policies underlying arbitral disclosure and those underlying judicial recusal, we find no reason to interpret the appearance-of-partiality rule more broadly in the context of arbitrator disclosure than in the context of judicial recusal. The language of both applicable statutes is virtually identical, and the judicial standard is explicitly made applicable to arbitrators. (§ 1281.9, subd. (a)(1) [proposed neutral arbitrator must disclose "[t]he existence of any ground specified in Section 170.1 for disqualification of a judge"].) It may be appropriate for an arbitrator to resolve doubts in favor of disclosure, but the arbitrator has no legal duty to do so.[14]

■ There are many reasons why a party might, reasonably or unreasonably, prefer not to have a particular arbitrator hear his or her case—including the arbitrator's prior experience, competence, and attitudes and viewpoints on a variety of matters. The disclosure requirements, however, are intended only to ensure the impartiality of the neutral arbitrator. (See Ethics Stds., com. to std. 7.) They are not intended to mandate disclosure of all matters that a party might wish to consider in deciding whether to oppose or accept the selection of an arbitrator. (See, e.g., *Luce, Forward, Hamilton & Scripps, LLP v. Koch, supra,* 162 Cal.App.4th at pp. 734–735 [neutral arbitrator not legally required to disclose service on board of professional organization with plaintiff's counsel, even if defendants asserted they were " 'understandably uncomfortable' " with that relationship].) When, as here, an arbitration agreement provides the parties or the parties' representatives the authority to jointly select a neutral arbitrator, they have the opportunity to take reasonable steps to satisfy themselves that the arbitrator they agree upon is acceptable. The

---

[14] In contrast, a trial court judge must "disclose on the record information that is reasonably relevant to the question of disqualification under Code of Civil Procedure section 170.1, even if the judge believes there is no actual basis for disqualification." (Cal. Code Jud. Ethics, canon 3E(2).) The arbitrator has no equivalent duty. As noted above, the arbitrator's duty to *disclose* extends to matters that would require a judge to *disqualify* himself or herself. The arbitrator, however, is not required to disclose all matters that a judge would be required to *disclose*.

type of information here at issue—a decision publicly censuring a judge, which has been published in the Official Reports of this court—is readily discoverable.[15]

■■■■ The broad interpretation of the duty to disclose urged by Ossakow could undermine the finality of arbitration awards. Under the applicable California statute, an arbitrator's failure to make a required disclosure requires vacation of the award, without a showing of prejudice. (§ 1286.2, subd. (a)(6).) "If the impression of possible bias rule is not to emasculate the policy of the law in favor of the finality of arbitration, the impression must be a reasonable one." (*San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 568 [104 Cal.Rptr. 733].) An arbitrator must be able to determine at the outset, with reasonable certainty, what information must be disclosed. It is reasonable to expect that a neutral arbitrator will be able to identify, without much difficulty, the information that must be disclosed regarding the particular relationships and interests that are clearly defined in section 1281.9 and standard 7 of the Ethics Standards. It may well be more difficult for the arbitrator to determine whether a disclosure must be made under the *general* standard of appearance of partiality, because that standard, although objective, is not clear cut. Ossakow's proposed interpretation of the standard, however, would place an unreasonable burden on the neutral arbitrator. The arbitrator cannot reasonably be expected to identify and disclose all events in the arbitrator's past, including those not connected to the parties, the facts, or the issues in controversy, that conceivably might cause a party to prefer another arbitrator. Such a broad interpretation of the appearance-of-partiality rule could subject arbitration awards to

---

[15] After the arbitration, Ossakow was able to locate several articles on the Internet referring to Judge Gordon's censure. Both Ossakow and her counsel filed declarations in the superior court stating they were unaware of Judge Gordon's censure until after the conclusion of the arbitration proceeding. The arbitrator selected by Ossakow, who was jointly responsible under the agreement for the selection of the neutral arbitrator, did not file a declaration.

Haworth does not contend in this court that Ossakow had actual or constructive knowledge, prior to the arbitration, of Judge Gordon's public censure. Consequently, we need not address the bearing such knowledge would have on a motion to vacate an arbitration award based upon the arbitrator's failure to disclose. (See *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 842–843 [83 Cal.Rptr.3d 116] [arbitrator's failure to make complete disclosure of all information required did not provide grounds for vacating award, when information that was disclosed put the party on notice of potential for bias and the party readily could have requested further information prior to the arbitration; *Finnen v. Barlow* (2006) 142 Cal.App.4th 185, 190–191 [47 Cal.Rptr.3d 687] [arbitrator's failure to fully disclose prior mediation of a matter involving a party to the arbitration did not provide a ground for vacating award, when the party challenging the award was a party in the prior mediation and recognized the arbitrator at the outset, but did not object to the arbitrator's participation until after issuance of the award]; *Remmey v. PaineWebber, Inc.* (4th Cir. 1994) 32 F.3d 143, 148 [arbitrator's failure to disclose information regarding professional discipline did not provide ground for vacating award when the party readily could have obtained the information prior to the arbitration].)

after-the-fact attacks by losing parties searching for potential disqualifying information only after an adverse decision has been made. (*Remmey v. PaineWebber, Inc., supra*, 32 F.3d 143, 148 ["If this challenge were sustained, nothing would stop future parties to arbitration from obtaining allegedly disqualifying information, going through with the proceedings, and then coming forward with the information only if disappointed by the decision."].) Such a result would undermine the finality of arbitrations without contributing to the fairness of arbitration proceedings.

### III.

The decision of the Court of Appeal is reversed.

Kennard, J., Baxter, J., Chin, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Dissenting.—I respectfully dissent. Contrary to the majority and like both the Court of Appeal and the trial court below, I believe the fact an arbitrator, while serving as a superior court judge, was publicly censured by this court for making repeated, overt and demeaning sexual comments in chambers to his female staff members "could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial" (Code Civ. Proc., § 1281.9, subd. (a)) in a gender-sensitive lawsuit over a female plaintiff's cosmetic surgery. Under our arbitration law, the arbitrator therefore had an obligation to disclose this fact upon his nomination as a neutral in this matter (*ibid.*), giving the parties an opportunity to choose another neutral. His failure to do so is grounds for vacating the award. (*Id.*, § 1286.2, subd. (a)(6)(A).)

To vacate an award for the nondisclosure of a matter that was of public record and could have been readily discovered beforehand is regrettable. Finality of awards is of great importance to our system of contractual arbitration, a fact reflected in the Legislature's having limited the grounds upon which a court may vacate an award. (Code Civ. Proc., § 1286.2; see *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 27–28 [10 Cal.Rptr.2d 183, 832 P.2d 899] [statutory grounds exclusive].) An equally vital principle, however, is that with such limited judicial review the arbitration system must have—and must be seen to have—sufficient integrity that parties can be confident they will receive a fair hearing and an impartial decision from the arbitrator. The system's integrity, real and apparent, is crucially protected, among other ways, by the disclosure requirements of Code of Civil Procedure section 1281.9. In condoning the failure of disclosure here, the majority sacrifices system integrity on the altar of arbitral finality.

The majority opinion rests on two conclusions: that the facts of Judge Norman Gordon's censure do not suggest bias against female litigants

generally (maj. opn., *ante*, at pp. 390–391), and that the present case is not one that would reasonably raise particular doubts about his ability to be fair (*id.* at pp. 390–392). We need not decide here whether *all* female litigants would have grounds to reasonably doubt Judge Gordon's impartiality. My disagreement with the majority is on the second point, i.e., whether one in possession of the facts of Judge Gordon's censure could reasonably doubt his ability to be fair to the female plaintiff in this case. The standard, it bears emphasizing, is not whether Judge Gordon in fact *would* be biased, but whether his past conduct could cause a person aware of the facts *to reasonably entertain a doubt* that he could be impartial. Although acknowledging this standard, the majority in my view fails actually to apply it, instead opining that "nothing in the public censure would suggest to a reasonable person that Judge Gordon *could not* be fair to female litigants" (*id.* at p. 390, italics added), and "the circumstances underlying the public censure would not suggest to a reasonable person that Judge Gordon's conduct and attitude toward women *would cause him* to favor a male physician over a female patient in a case in which the appearance of the patient who underwent cosmetic surgery instead was worsened" (*id.* at p. 391, italics added).

In assessing whether one aware of the facts could reasonably entertain a doubt about Judge Gordon's ability to arbitrate this dispute without bias, of relevance is not only that he was publicly censured for "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" (Cal. Const., art. VI, § 18, subd. (d)(2)), but the nature of the conduct underlying that censure. The majority, drawing on this court's decision in *In re Gordon* (1996) 13 Cal.4th 472 [53 Cal.Rptr.2d 788, 917 P.2d 627], minimizes the judge's sexually harassing conduct, observing that it did not occur in the courtroom, the Commission on Judicial Performance (Commission) made no finding he acted out of malice toward his staff members, and our opinion censuring him referred to his " 'ostensibly joking manner.' " (Maj. opn., *ante*, at p. 390.) A better understanding of the conduct censured is gained from the full decision and recommendation of the Commission, which this court adopted in our censure decision. (*In re Gordon*, at p. 474.)[1] Although, as the

---

[1] The Commission's decision and recommendation (Com.Jud.Perf., Inquiry No. 119, Decision and Recommendation (Apr. 15, 1996); hereafter Decision) is included in the record of our censure decision, of which we may, of course, take judicial notice irrespective of whether the parties have requested that we do so (Evid. Code, §§ 452, subd. (d), 459; see also Assem. Com. on Judiciary com., reprinted at 29B pt. 1 West's Ann. Evid. Code (1995 ed.) foll. § 452, p. 448), and its contents were reported in the press (see Weinstein, *Judge Should Be Censured, Panel Says*, L.A. Times (May 17, 1996) p. B-1). Had the parties been made aware of the censure they could have obtained the facts from either source.

Technically, I would take notice of the Decision only to show what facts the Commission *found*, rather than to show the truth of those findings, and would take notice of the cited newspaper article to show only that the findings were publicly reported. But as Judge Gordon

majority states, the Commission's factual findings were not before the trial court and we do not ordinarily take judicial notice of evidence not presented to the trial court (maj. opn., *ante*, at p. 379, fn. 2), we have the discretion to do so in unusual circumstances. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085]; *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 [48 Cal.Rptr.2d 87, 906 P.2d 1242].) In my view, the circumstances here make notice of the Commission findings appropriate.[2]

The complainant in the Commission proceeding was a court reporter, referred to in the Decision as Ms. A, who served as the reporter for Judge Gordon from 1990 to 1992.[3] In early 1992, Ms. A, who was married, made it known that she was attempting to become pregnant. Apparently with that effort in mind, Judge Gordon repeatedly referred to her as a " 'little copulator' "; asked her " 'Did you get any last night?' "; and, when she visited her gynecologist, asked after the condition of her vagina, using a vulgar slang term. While on vacation, Judge Gordon mailed to Ms. A, addressed to her at the courthouse, a postcard with a photograph of a female orangutan lying on

---

did not contest the Commission's findings in this court and we, on review of the record, found them justified (see *In re Gordon, supra,* 13 Cal.4th at pp. 473–474), a person aware of the findings and this procedural history could reasonably assume, or at least strongly suspect, their truth.

[2] First, the Commission's findings, although not presented to the superior court, were known to the initial decision maker—Judge Gordon, as arbitrator—at the time he was required to make disclosures under Code of Civil Procedure section 1281.9. That is, at the time he made the decision not to disclose his censure, he knew the Commission had made such findings, that he had not disputed them in this court, and that we had found them supported by the evidence taken before the Commission. The Commission's findings are thus not only highly material to the decision ultimately under review—the arbitrator's failure to disclose his public censure— they were actually known to the decision maker at the time.

Second, we review the superior court's ruling on vacation of the award de novo. (Maj. opn., *ante,* at p. 385.) In comparable circumstances, de novo review of a superior court's ruling on a summary judgment motion, notice of materials outside the appellate record has been held proper. (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975, fn. 5 [132 Cal.Rptr.2d 635].)

Third, the notice taken here is *supportive* of the superior court's judgment granting the petition to vacate the award. This case does not, therefore, present the problem of a party seeking to go outside the appellate record in order to impeach a superior court judgment with matters of which the lower court was unaware.

Finally, as mentioned above (see, *ante,* fn. 1), we need take notice only that the Commission *made* the findings it did. Courts have typically approved notice that certain findings had been made, even when notice of the findings' *truth* would not be proper. (See *Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1749 [50 Cal.Rptr.2d 484]; *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564–1565 [8 Cal.Rptr.2d 552].) That the Commission made the findings it did, and that those findings were publicly reported, are indisputable and highly pertinent facts to which this court is not required to blind itself.

[3] Ms. A was also the plaintiff in a civil action alleging sexual harassment and wrongful termination, which was settled and dismissed prior to the Commission proceeding. (Decision, *supra,* at p. 3.)

her back, legs spread, with the printed caption, "Let's face it I am lovable." At about the same time, Judge Gordon sent Ms. B, his court clerk, a postcard showing a bare-breasted woman on a London street holding her nipples. In conversation with another court staffer, Judge Gordon referred to a female judge as " 'fatso' " and a " 'sow.' " Judge Gordon also used "crude and demeaning names and descriptions and an ethnic slur" (*In re Gordon, supra,* 13 Cal.4th at p. 474) in referring to his female staff members. (See also Decision, *supra,* at pp. 4–5.)

Addressed by a judge to his subordinate employees, such conduct, even if cloaked in a " 'joking manner' " (maj. opn., *ante,* at p. 390), is far from humorous and seems very likely to cause embarrassment or emotional injury. The conduct, moreover, took place in Judge Gordon's chambers, a workplace he headed. He was either ignorant of his duty to maintain a respectful judicial work environment or, if aware, unable to control his impulse to denigrate women in this environment. In either case, a person aware of the facts could reasonably conclude not only that Judge Gordon harbored disrespectful, disdainful and denigrating attitudes toward women, but also that he was unwilling or unable to restrain himself from acting on those attitudes in his relationships with his judicial staff and, accordingly, might reasonably doubt whether Judge Gordon would be willing or able to put aside his contempt for women and his single-minded focus on their sexuality when acting as a neutral arbitrator in a gender-sensitive case. While none of the censured conduct was directed at female litigants, as noted in our decision in *In re Gordon,* "the result [of his behavior] was an overall courtroom environment where discussion of sex and improper ethnic and racial comments were customary." (*In re Gordon, supra,* 13 Cal.4th at p. 474.)

The majority reasons that plaintiff's medical negligence and battery claims do not present the type of dispute in which gender stereotypes and biases are likely to play a part, making doubts as to Judge Gordon's impartiality unreasonable even though his censured conduct demonstrates gender bias. (Maj. opn., *ante,* at pp. 390–391.) I do not share the majority's blinkered view of how gender bias may affect judicial decisionmaking.

Contrary to the majority's evident view, the effects of judicial bias are not limited to actions alleging discrimination or sexual harassment. *In re Marriage of Iverson* (1992) 11 Cal.App.4th 1495 [15 Cal.Rptr.2d 70], a marital dissolution case, did not involve any allegations of harassment or other discrimination but turned, rather, on resolution of the validity of a prenuptial agreement. Yet the appellate court held the trial judge's reference to the wife as a " 'lovely girl' " (*id.* at p. 1499), his assumptions about male and female attitudes toward marriage, and his invocation of the adage that a man would not " 'buy the cow when [he] get[s] the milk free' " (*ibid.*), showed the

operation of disqualifying gender bias. (*Id.* at pp. 1499–1501; see also *id.* at pp. 1504–1505 (conc. opn. of Moore, J.) [the judge's remarks, although not establishing actual bias, required his disqualification because they could have led a person aware of the facts to reasonably doubt his impartiality].)

In the present case, one could reasonably believe the subject matter could bring into play biased attitudes toward women. Cosmetic surgery is most commonly associated with women and is stereotypically associated with female vanity and superficiality. One could reasonably believe that a man disrespectful and disdainful of women, as Judge Gordon's behavior demonstrated he has been, is likely to hold the stereotypical view that women generally are vain and superficial and hence would be likely to discount a woman's claims that she received negligent and improper treatment during cosmetic surgery. Moreover, in her battery count plaintiff alleged the surgeon had performed a procedure without her consent, a claim depending on the premise she enjoyed full individual autonomy to choose her treatment. A person aware of the facts could reasonably suspect a man holding the demeaning attitudes toward women manifested by Judge Gordon might be resistant to accepting a woman's full autonomy.

The majority asserts that even if Judge Gordon's censured conduct could be seen as disparaging women on account of their physical appearance and as showing he "valued a woman's physical attributes over other attributes that are more relevant to the workplace," one might just as well speculate "a man who values physical attractiveness in women might be more sympathetic toward the female patient" seeking to improve her appearance through cosmetic surgery. (Maj. opn., *ante*, at p. 391.) But I doubt any person aware of the facts would see evidence of a sympathetic attitude toward women in the embarrassing, belittling and disrespectful conduct and comments the Commission found occurred. At any rate, to draw the *opposite* conclusion— that is, to doubt the arbitrator would be fair to the female plaintiff's claims of negligent cosmetic surgery—would at least be "reasonabl[e]." (Code Civ. Proc., § 1281.9, subd. (a).) That is all the statute requires for mandatory disclosure.[4]

Most important, Judge Gordon's censured conduct demonstrated an unwillingness or inability to control his impulse to harass and belittle women, even in a context—employment in judicial chambers—in which he must have

---

[4] Similarly, the majority's reliance on the passage of time and the presumed effect of public censure (maj. opn., *ante*, at pp. 390–391) is misplaced in light of the statutory standard. While one might reasonably hope that discipline for judicial misbehavior will, together with the passage of time, produce reform, one might equally well "reasonably entertain a doubt" (Code Civ. Proc., § 1281.9, subd. (a)) that personal biases and their impact on one's behavior and thinking are so readily changed.

known such harassment could have serious consequences. A person aware of the facts of Judge Gordon's censure could for this reason reasonably doubt whether he could resist giving sway to his biased attitudes and render an impartial decision.

The Judicial Council of California has cited Judge Gordon's censured conduct as an example of the gender-biased behavior California judges should avoid. (Judicial Council of Cal., Guidelines for Judicial Officers: Avoiding the Appearance of Bias (Aug. 1996) p. 15.) I agree with the Chief Justice, who, in his letter introducing the Judicial Council guidelines, observed that "[t]he important principles set forth in the booklet serve to reaffirm the Judiciary's continuing commitment to ensure access and fairness for all participants in the California judicial system." (*Id.*, introduction.) By its overly narrow application of Code of Civil Procedure section 1281.9, the majority, regrettably, fails to reaffirm that same commitment for participants in California's contractual arbitration system.

Like the superior court and Court of Appeal below, I would hold the neutral arbitrator in the circumstances of this case was required, under Code of Civil Procedure section 1281.9, to disclose his prior censure by this court. His failure to do so was grounds for vacating the award under Code of Civil Procedure section 1286.2. Because the majority holds otherwise, I dissent.

Moreno, J., concurred.

On September 1, 2010, the opinion was modified to read as printed above.