Filed 11/13/13  Royal Alliance Associates v. Peterson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| ROYAL ALLIANCE ASSOCIATES, INC., <br><br> Petitioner and Appellant, <br><br> v. <br><br> DARLENE R. PETERSON et al., <br><br> Defendants and Respondents. | B245416 <br><br> (Los Angeles County Super. Ct. No. BS137102) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Greenberg Traurig, Karin L. Bohmholdt, Shira Moses, and Terry R. Weiss for Petitioner and Appellant.

Frandzel Robins Bloom & Csato, Thomas M. Robins III, Tricia L. Legittino, Alan H. Fairley; Oakes & Fosher, and Richard B. Fosher for Defendants and Respondents.

_____

This case concerns a trial court judgment confirming an arbitration award in favor of respondents Darlene R. Peterson, Karen L. LaBuda, and Sherry A. Leach-Warth. Appellant Royal Alliance Associates, Inc. contends the arbitration panel made two errors that warrant vacatur of the court's judgment. The first is that the panel refused to hear material evidence in violation of its statutory obligation to do so. The second is that one of the arbitrators failed to disclose a matter during the panel selection process that would have caused a reasonable doubt regarding her impartiality. Finding no errors, we affirm the court's judgment.

## FACTUAL AND PROCEDURAL SUMMARY

The summary that follows is based on evidence presented and presumably credited by the arbitrators. Thus, we summarize the facts in the light most favorable to the record. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 31 (*Moncharsh*) ["[T]he general rule [is] that an arbitrator's legal, as well as factual, determinations are final and not subject to judicial review."].)

Respondents worked for AT&T Inc. as service representatives, clerks, and order writers for over 30 years each. Prior to retirement in 2007, AT&T presented each of them with two retirement options: to receive a lump sum or lifetime pension. They met with Kathleen J. Tarr, an agent registered with the Financial Industry Regulatory Authority (FINRA) and a Royal Alliance employee. Respondents entered into standard customer agreements with Royal Alliance, which included a specification that any dispute would be resolved pursuant to the terms of the FINRA Code of Arbitration Procedure (FINRA Code). Two of the respondents told Ms. Tarr that they preferred the pension, because they needed regular monthly income to satisfy ongoing expenses, such as mortgage payments. The third told Ms. Tarr that she preferred the lump sum, because she needed money for down payments on a house and car. Some told Ms. Tarr that they wanted their "nest egg" funds in "conservative" and "safe" investments. In each case, respondents emphasized dependence on their retirement funds.

2

Relying on Ms. Tarr's advice that the lump sum would achieve a higher rate of return, respondents declined the pension and took the one-time payment. Soon respondents witnessed their retirement accounts dwindle faster than expected. One respondent's account decreased from approximately $400,000 to $150,000. As a result, in October 2010, they filed a claim against appellant pursuant to the customer agreement, again agreeing to be bound by the FINRA Code.

Prior to the hearing, the parties engaged in an arbitrator selection process that resulted in a three-member panel. FINRA Code rule 12405 requires potential arbitrators to disclose "any circumstances which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding," with a continuing duty to voluntarily share additional information as potential conflicts arise. To guide arbitrators through the matters they should disclose, FINRA also provides checklists. Accordingly, during the ranking process, potential arbitrators reported information, such as employment and educational backgrounds. The parties then used the information provided to rank and strike arbitrators from the panel.

The resulting panel consisted of two public arbitrators and one industry representative, referred to as the private arbitrator. Laurent C. Vonderweidt, a practicing attorney and former securities broker, served as a public arbitrator and the chairperson. Ronald F. Rybandt served as the private arbitrator, and Sandra L. Malek served as a public arbitrator. Prior to this arbitration, Ms. Malek had served on 47 FINRA arbitration panels. She had practiced securities-related law for 30 years, representing large brokerage firms, brokers, and customers. In 1986, a brokerage firm filed a malpractice complaint against multiple partners and agents of two separate law firms.[1] Ms. Malek worked as an associate at one of the firms. During her work as a lawyer in 2010, she and her partner filed a lawsuit to recover unpaid legal fees from a former client, a FINRA-

---

[1] Only respondents mention this 1986 matter in their brief. Because appellant does not raise the issue in its appeal, we do not analyze it below.

registered broker. In response, the former client threatened to bring a malpractice claim against Ms. Malek. She did not disclose these matters during selection.

In February 2012, the parties presented their cases during a three-day arbitration hearing. Respondents claimed that Ms. Tarr's motivation to earn commissions led to risky investment decisions that depleted their retirement savings. They sought to show that Ms. Tarr placed their retirement funds into particular investments contrary to their best interests, in order to earn commissions. Appellant argued that respondents suffered little damage, since their investment balances decreased alongside the general market during the recession of 2008 and 2009. It also claimed that Ms. Tarr allowed respondents to decide how to invest their retirement funds.

As the arbitration hearing proceeded, the introduction of evidence became a central issue. At the start of the cross-examination of respondent Ms. Leach-Warth, appellant referenced a binder of documents containing her account information, among other items. The chairperson noted "counsel is making reference to a document [it has] not introduced yet." Appellant said it normally would introduce the evidence "in whole after my case-in-chief." Ms. Malek said she was "marking them down as offered. . . . And then at the end of your case or at the end of the witness, however you choose to do it, we can move them into [evidence]." Another panelist added, "if there's no objection, or if there's an objection we'll deal with it then."

At the time, counsel for respondents had no objections to the use of the documents in the binder, but noted "one authentication problem that both of us share . . . on the broker notes, which I'm willing to admit . . . into evidence. There's also a broker's telephone log in my book, which I would offer . . . into evidence as well." Appellant represented the broker notes as including Ms. Tarr's conversations with respondents. The notes mention information that may have contradicted claims of each respondent. They indicated that one respondent frequently interacted with Ms. Tarr regarding the status of her investments, which may have undermined respondents' portrayal as novice investors. In other portions, the notes indicated that respondents had various incentives to choose

4

the lump sum option, and in some cases, were aware of the possible negative consequences of their investment decisions. Appellant then continued questioning Ms. Leach-Warth on financial figures and details from statements in the binder, instructing her to view certain documents to confirm and elicit account information.

In cross-examining respondents, appellant referenced the binder of materials that included the broker notes. During Ms. Leath-Warth's cross-examination, appellant instructed her to view other binder contents, and then prompted her to "turn to Exhibit 29." Appellant said it would "just like to take [the witness] through a few entries in this." Counsel for respondents objected that the broker notes in Exhibit 29, prepared by Ms. Tarr, lacked foundation and violated the best evidence rule. Appellant's counsel responded, "all I am trying to do is go through entries to see if it refreshes the witness' [*sic*] recollection as to agreement of the events and circumstances on a particular day . . . ." Appellant's counsel continued, "I'm not submitting it for the truth of the matter asserted. . . . I would like to read the circumstances to see if it jogs the memory of the witness."

When Ms. Malek asked how appellant intended to refresh Ms. Leach-Warth's recollection, appellant's counsel responded, "To be honest with you, I was going to use similar notes for each of the plaintiffs and read recitals to that." Respondents' counsel raised the concern that appellant was using a "backdoor way to try to get [the broker notes] in as the truth of the matter asserted." As a result, the panel prohibited appellant from introducing the broker notes, but permitted their use "for you[r] internal benefit if you want for the purpose of refreshing the witness memory." Appellant's counsel responded, "Very good. Thank you," and proceeded with the cross-examination, but made no further reference to the notes. Counsel for appellant questioned Ms. Leach-Warth on matters in the notes, including her level of knowledge regarding her investment decisions and her incentives to choose the lump sum option.

Later in the hearing, appellant's counsel made a "soft objection" during direct examination of respondent Ms. LaBuda. He said, "I'm not objecting to the document,

5

I'm objecting to the fact that it's being used in this case without allowing me to use the other documents that were produced in the same manner. . . . I think it's a little inconsistent that this document is being permitted to be used which was part and parcel with the broker notes that I was not permitted to use." After an exchange, however, counsel withdrew the objection. Finally, he again sought to use the broker notes during the cross-examination of Ms. Peterson in what appears to have been an attempt at impeachment. Counsel for appellant hoped to "recite what I underst[ood] her recollection was" and the witness could then "agree with it or disagree with it." Respondents' counsel objected. Once again, the panel ruled "[t]he document is not admissible . . . you can use it maybe to try to refresh a witness recollection but not to quote the document by itself." Appellant's counsel then continued questioning Ms. Peterson regarding conversations mentioned in the broker log.

Finally, at the conclusion of the arbitration hearing, the chairperson asked the parties if they had "any questions, issues [or] objections to the panel." Respondents' counsel answered, "[c]laimant has had a full and fair opportunity to be heard." Counsel for appellant responded, "[l]ikewise for [Royal Alliance]." The panel awarded a total of $1,403,500 in damages to respondents: $650,000 for compensatory damages, $703,500 for prejudgment interest, $30,000 for punitive damages, and $20,000 for fees and costs.[2]

Appellant petitioned the trial court to vacate the award and order a new arbitration in front of a new panel. It claimed the arbitrators erred in refusing to hear material evidence, and Ms. Malek failed to disclose required information during the arbitrator selection process. Respondents cross-petitioned to confirm the award. On October 1, 2012, the trial court confirmed the arbitration award, citing *Haworth v. Superior Court* (2010) 50 Cal.4th 372 (*Haworth*). Appellant filed a timely notice of appeal.

---

[2] The compensatory damages were divided among the three respondents: $75,000 to Ms. Peterson, $305,000 to Ms. LaBuda, and $270,000 to Ms. Leach-Warth. Each respondent was awarded $10,000 in punitive damages.

DISCUSSION

We review a challenge to a trial court's confirmation of an arbitration award under the de novo standard. (*Haworth*, *supra*, 50 Cal.4th at pp. 385-389; *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 52 [finding review is de novo where, as argued in this claim, the challenge concerns the "arbitrator's alleged failure to disclose circumstances creating an appearance of partiality"]; *Burlage v. Superior Court* (2009) 178 Cal.App.4th 524, 529 (*Burlage*) [reviewing de novo a trial court's confirmation of an arbitration award challenged on the grounds of wrongfully excluded evidence].) We apply the substantial evidence standard, however, "to the extent the trial court's ruling rests upon a determination of disputed factual issues." (*Burlage*, at p. 529.)

"[I]t is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh*, *supra*, 3 Cal.4th at p. 9.) "Generally, in the absence of a specific agreement by the parties to the contrary, a court may not review the merits of an arbitration award." (*Haworth*, *supra*, 50 Cal.4th at p. 380.) However, "the Legislature has reduced the risk to the parties of [an arbitration] decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh*, at p. 12.)

I

Appellant contends the trial court erred in confirming the arbitration award because the panel refused to hear evidence. It claims that Ms. Tarr's notes of conversations with respondents were material, and the arbitrators should have heard them during the proceedings. As a result of the panel's refusal to hear the evidence, appellant argues it suffered prejudice.

"[A]n award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in sections 1286.2 (to vacate) . . . ." (*Moncharsh*, *supra*, 3 Cal.4th at p. 33.) A trial court "shall

vacate the award if the court determines . . . [¶] . . . [¶] . . . [t]he rights of the party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." (Code Civ. Proc. § 1286.2, subd. (a).)[3] Courts have interpreted this provision to vacate as "a safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case." (*Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 439 (*Hall*).) Where a "party complains of excluded material evidence, the reviewing court should generally focus first on prejudice, not materiality." (*Ibid.*) We do not vacate an arbitration award on the grounds of an erroneous evidentiary ruling unless this standard is met. Thus, to determine whether the trial court should have vacated rather than confirmed the arbitration award, we first consider whether appellant suffered prejudice by the panel's alleged refusal to hear evidence.

It did not, for two reasons. First, appellant failed to offer the broker notes into evidence. Both the procedure during the hearing and statements by counsel for appellants to the panel demonstrate no effort to use this evidence for substantive purposes. To the contrary, during Ms. Leach-Warth's cross-examination, counsel for appellant clearly expressed his wish to use the notes to refresh the witness's memory, and "not . . . for the truth of the matter asserted." The panel permitted use of the notes for this purpose. When counsel for appellant later attempted to use the notes to impeach Ms. Peterson, again the panel permitted use of the notes to inform the content of the questioning. At no point did appellant's counsel offer the notes into evidence.

Appellant argues its counsel offered the notes when Ms. Malek marked the exhibits "as offered" during the cross-examination of Ms. Leach-Warth. But as Ms. Malek said, "then at the end of your case or at the end of the witness, however you choose to do it, we can move them into [evidence]." This suggests that in order to make a formal offer to admit the notes, counsel for appellant needed to make a motion later in the proceeding. Such a motion was never made. Since appellant failed to offer the notes

---

[3] All statutory references are to the Code of Civil Procedure.

into evidence, it cannot later be heard to claim that it suffered prejudice by the arbitrators' evidentiary rulings.

Appellant's claim fails for a second reason. Simply because hearsay evidence is not per se excludable in arbitration does not mean that arbitrators are required to admit hearsay evidence. (§ 1282.2, subd. (d) [The "rules of evidence . . . need not be observed" during an arbitration hearing unless the arbitration agreement otherwise provides.].)[4] We vacate an award where "arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4).) Arbitrators do not exceed their powers "'merely because they assign an erroneous reason for their decision'" or err in deciding issues of law and fact. (*Moncharsh*, *supra*, 3 Cal.4th at p. 28.) "The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." (*Ibid.*) If arbitrators were subject to exceeding their powers in these areas, it "would permit the exception to swallow the rule of limited judicial review." (*Ibid.*)

The record here does not indicate the arbitrators exceeded their powers. During the arbitration hearing, appellant made no effort to demonstrate Ms. Tarr's unavailability, or reasons for not providing a declaration from her attesting to the accuracy of the broker notes. It also failed to present facts that would support authentication of the notes. Only at the trial court did appellant claim that Ms. Tarr was unavailable to testify and that the broker notes were recorded in the regular course of business. In the absence of any offering to buttress this hearsay evidence, the arbitrators did not exceed their powers by excluding its use for the truth of the matter asserted.

Finally, the fact that hearsay evidence is not per se excludable does not mean that it must be admitted. Arbitrators are allowed discretion in evidentiary determinations. Here, appellant argues that arbitrators fail to hear evidence when they exclude it without knowing its substance. We understand this to mean that arbitrators must know what is

---

[4] FINRA Code rule 12604(a), which governs this dispute, states: "The panel will decide what evidence to admit. The panel is not required to follow state or federal rules of evidence."

being offered in order to rule whether to admit or exclude it. In this case, there is no doubt that the arbitrators knew what appellants now claim to have offered: that the proffered evidence was notes purportedly authored by Ms. Tarr in conversations with appellants concerning their need for funds. Thus, we find no merit in appellant's claim that the arbitrators abused their discretion in failing to hear the evidence.

## II

Appellant also challenges this award because of what it asserts is a failure to disclose by one of the arbitrators, Ms. Malek. It argues that she neglected to disclose a 2010 case in which she and her law partner sued a former client, a FINRA-registered broker, for unpaid legal fees. The former client then threatened to bring a malpractice action against the partner and Ms. Malek. Appellant claims that because this matter also concerned a FINRA-registered broker, a reasonable person would doubt Ms. Malek's impartiality, and thus it should have been disclosed.[5]

"In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ." (§ 1281.9, subd. (a).) Arbitrators must disclose "specified relationships between the arbitrator and the parties to the arbitration, including involvement in prior arbitrations, an attorney-client relationship with any attorney involved in the arbitration, and any significant personal or professional relationship with a party or an attorney involved in the arbitration." (*Haworth*, *supra*, 50 Cal.4th at p. 381, citing § 1281.9, subd. (a)(3)-(6).) These standards for arbitrator disclosure directly incorporate the regulations governing judges. (§ 1281.9, subd. (a)(1)-(2) [arbitrators must disclose "any ground specified in Section 170.1 for disqualification of a judge," as well as "matters required to be disclosed by the ethics standards for

---

[5] Simultaneously with its opening brief, appellant filed a motion for leave to produce additional evidence. It sought to admit evidence that Ms. Malek disclosed the above matter in subsequent arbitrations. The motion was denied.

10

neutral arbitrators adopted by the Judicial Council"].)  In practice, however, an "arbitrator cannot reasonably be expected to identify and disclose all events in the arbitrator's past, including those not connected to the parties, the facts, or the issues in controversy, that conceivably might cause a party to prefer another arbitrator."  (*Haworth*, *supra*, 50 Cal.4th at pp. 394-395.)

Ms. Malek's action to recover fees from a former client could not lead a reasonable person to doubt her impartiality in the proceeding.  The matter is wholly disconnected from the parties, facts, and issues in the present arbitration.  First, Ms. Malek's action concerns a former client who has no role in the present arbitration.  Appellant offered no evidence to indicate the former client is connected to appellant Royal Alliance or Ms. Tarr.  Second, the facts of the present case and Ms. Malek's dispute with her former client are distinct.  Again, appellant provided no evidence indicating an overlap of facts.  Finally, the issues in Ms. Malek's matter are entirely disconnected from the contested issues in arbitration.  While Ms. Malek's dispute involves a FINRA-registered agent, it is unrelated to any securities issue.  It narrowly concerns the recovery of unpaid legal fees, an issue that does not appear in the arbitration.  Ms. Malek's dispute with her former client is the kind of """"ordinary and insubstantial business dealing[]"""" that does not require disclosure. (*Luce, Forward, Hamilton & Scripps, LLP v. Koch* (2008) 162 Cal.App.4th 720, 733.)  Ms. Malek was not required to disclose the matter during the arbitration panel selection process.

We find appellant's claims of arbitrator errors to be without merit.  The trial court was under no obligation to vacate the arbitration award. (§ 1286.2.)  Accordingly, we affirm the judgment confirming the award.

11

## DISPOSITION

The judgment is affirmed.  Respondents to have their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EPSTEIN, P. J.


We concur:



MANELLA, J.



SUZUKAWA, J.

12