[No. G043665. Fourth Dist., Div. Three. June 28, 2011.]

HERBERT REBMANN et al., Plaintiffs and Respondents, v.
PETER ROHDE et al., Defendants and Appellants.

## COUNSEL

Law Offices of Dean E. Smart and Dean E. Smart for Defendants and Appellants.

Robinson & Robinson and Jeffrey A. Robinson for Plaintiffs and Respondents.

## OPINION

**MOORE, Acting P. J.**—Defendant Peter Rohde informed the trial court that if he had "known about his religious affiliation, his cultural affiliation, and the dedication to keeping the memory of the Holocaust alive, I never would have allowed him to be the arbitrator in my case." Rohde submitted declarations stating his own father served in the German army during World War II and his wife's father was in the Schutzstaffel (commonly known as the SS). He claims to have discovered that the arbitrator's parents were German Jewish escapees who lost family and property in the Holocaust by searching on the Internet after he lost the arbitration, a commercial case which has absolutely nothing to do with the Jewish religion or the Holocaust. Rohde and the other appellants now claim the arbitration award should be vacated because the arbitrator did not disclose facts about his religion and family background. Their argument is without merit.

Defendants further argue that the trial court should have permitted them to take the arbitrator's deposition and that a statement of decision regarding the petition to confirm the arbitration award was necessary. Defendants are again wrong, and we affirm.

### I

### FACTS

Rohde is a principal of Science & Ingredients, Inc. (Science Inc.), formerly known as Precious Smart Ingredients, Inc. (Precious Smart), a California corporation. Precious Smart was formed by Rohde for the purpose of creating a new entity called Lipoid USA, LLC (Lipoid), with plaintiff R&R Beteiligungsgesellschaft (RRB), a German business entity. RRB is owned by plaintiff Herbert Rebmann.[1] Lipoid had a written operating agreement, whereby Rohde and Precious Smart had a 25 percent interest, and Rebmann and RRB owned the remaining 75 percent. The limited liability company was formed to distribute nutritional supplements in North America.

---

[1] Rohde, Science Inc., Precious Smart, and any related entities are collectively referred to as defendants or the Rohde parties. RRB, Rebmann and any related entities are collectively referred to as plaintiffs or the Rebmann parties.

Problems developed and the Rohde parties initiated arbitration proceedings pursuant to the operating agreement.[2] They sought to hold the Rebmann parties liable for substantial monetary damages, arguing that the Rebmann parties induced the Rohde parties into the Lipoid joint venture by intentionally or recklessly misrepresenting various material facts.

The arbitration was conducted by JAMS. The parties could not agree on an arbitrator, so JAMS selected Stephen E. Haberfeld, a retired federal magistrate judge. JAMS provided a 10-page arbitrator disclosure checklist, covering a lengthy list of items under the Code of Civil Procedure and California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration. This document also included Haberfeld's declaration that he had "made a reasonable effort to inform [him]self of any matters that could cause a person aware of the facts to reasonably entertain a doubt that as the proposed arbitrator [he] would be able to be impartial."

JAMS advised the parties of these declarations and stated that the arbitrator had "disclosed all such matters to the parties to the best of his/her knowledge according to statutory and ethical guidelines." JAMS also stated: "Each participant in this arbitration is asked to advise all parties and JAMS of any information that is inconsistent with or not included in the provided disclosure, such as any matters that may affect the arbitrator's ability to be impartial. Please advise [JAMS] . . . if you know of any additional information that should be in the disclosure to all parties. . . . JAMS and the arbitrator will rely upon all parties' disclosure to us of information which is inconsistent with or not included in the disclosure provided."

During a conference call several weeks later, Haberfeld reiterated that he had no specific disclosures to make based on the information the parties provided. The parties and counsel were directed to check their records and recollections to determine "whether any of them knows or has any reason to believe there has been any professional, financial, and/or social relationship between any party, lawyer . . . and/or witness, on the one hand, and the Arbitrator or any member of the Arbitrator's family, on the other hand."

The arbitration then began. According to the arbitration award, the proceedings lasted "more than 33 months," concluding with a seven-day session in January 2009. According to the Rohde parties, the arbitration lasted only those seven days.[3]

---

[2] The case was initially litigated in Germany, but the German court determined that arbitration in California should proceed first.

[3] The Rohde parties' citations to the record are profoundly unhelpful to this court. They include record citations only at the end of sometimes lengthy paragraphs, often citing 30 or more pages at once. In their reply brief they argue that "Respondents untruthfully imply a

Because the merits of the arbitrator's decisions are not contested here, we do not discuss them in detail. Suffice to say that based on Haberfeld's lengthy decision, the arbitration concerned purely commercial matters. Haberfeld concluded that the Rohde parties had "failed to sustain [their] burden of proof" on any of their claims. He ruled in favor of the Rebmann parties on their counterclaims, but awarded only nominal damages of $1,000. Haberfeld also found that the Rebmann parties were the "prevailing party" under the operating agreement, and thus entitled to contractual attorney fees and costs. After initially releasing these findings in April, further briefing was conducted, and Haberfeld eventually awarded the Rebmann parties $1,136,000 in attorney fees and costs. Haberfeld set forth his reasoning for this decision over approximately eight pages of the final award. Defendants claimed to be "[s]tunned by the astronomical attorney's fees awarded in a case where only nominal damages were found."

As the prevailing parties, plaintiffs filed a petition to confirm the final arbitration award. According to defendants' counsel at oral argument, "Something did not smell right" about the attorney fee award, so counsel "began an Internet investigation that went on for weeks. . . ." Defendants suddenly "found" public information, specifically that Haberfeld (who was born in 1944 and raised in the U.S.) had parents who were of German Jewish heritage. Haberfeld's parents moved to the United States shortly before World War II. Haberfeld and his parents lost family and property in the Holocaust and were members of the "1939 Club," an organization dedicated to avoiding a repeat of the Holocaust. Based on this information, defendants filed an opposition to plaintiffs' petition to confirm the arbitration award and a counterpetition to vacate. They argued that Haberfeld had failed to make proper disclosures prior to the arbitration.

In support of defendants' argument, Rohde's wife, who was never a witness during the arbitration, filed a declaration stating that she was born in Germany in 1943 and her father had served in the SS during World War II. Rohde filed a declaration stating that he was born in Berlin in 1943, and his father served in the German army during World War II. He defected from East Germany when he was 18. He further stated: "Had I known about his religious affiliation, his cultural affiliation, and the dedication to keeping the memory of the Holocaust alive, I never would have allowed him to be the arbitrator in my case."

Notably absent from defendants' arguments were any assertions that this case had anything whatsoever to do with World War II or the Holocaust, that

---

contentious 33 month arbitration took place . . . . This is demonstrably false." They fail to include any record citation except to respondents' brief. They assert that the Rebmann parties' brief includes "wildly inaccurate" facts, again without any citation to the record.

Haberfeld had any knowledge about Rohde's father's connection to World War II (much less his father-in-law's, who presumably had a different surname), any mention that Rebmann was just as German as Rohde, or any facts reasonably questioning Haberfeld's impartiality. Nonetheless, Rohde asserted that Haberfeld intended to "punish me for the harms brought on his family."

Plaintiffs opposed defendants' petition. They argued that Haberfeld had no duty to disclose his background or membership in the 1939 Club since neither could cause a reasonable person to doubt his impartiality. Further, they argued that this information was irrelevant, both parties were German, and that the purported facts that triggered bias were unknown to Haberfeld. In sum, they argued, defendants were simply seeking to avoid an unfavorable award.

In October, the proceedings were assigned to Retired Judge Richard Luesebrink. Defendants moved to disqualify Judge Luesebrink pursuant to Code of Civil Procedure section 170.3[4] because of his former affiliation with JAMS. During the disqualification proceedings, defendants claimed to have "very substantial consequential damages" claims against JAMS, up to $2 million. The motion was heard by another judge and denied.

In the meantime, defendants indicated they wished to take Haberfeld's deposition. Haberfeld filed a motion for a protective order, or in the alternative, a motion to quash the deposition subpoena. Haberfeld filed a declaration in support of his motion. Among other things, he declared that he was neutral and unbiased at all times in the conduct of the arbitration, and that he had no knowledge or belief at all concerning any party, witness, or family member's involvement in World War II or the Holocaust, and that the arbitration did not concern such matters in any fashion. He also stated that the same Internet search that defendants' counsel had undertaken after the arbitration could have been done before and produced the same results.

In due course, Judge Luesebrink found that defendants had not presented any evidence that Haberfeld had knowingly failed to disclose any material facts and granted the protective order. Subsequently, on February 2, 2010, Judge Luesebrink granted the petition to confirm the arbitration award and denied defendants' counterpetition to vacate the award.[5] On February 10, defendants for the first time filed a request for a statement of decision, requesting the court to answer 37 separate questions. Plaintiffs opposed the request as untimely, arguing that any such request was required to have been made at the hearing.

---

[4] Subsequent statutory references are to the Code of Civil Procedure.

[5] In the trial court, defendants also argued that the arbitrator had failed to admit material evidence, but they abandon that argument here.

## II

## DISCUSSION

Defendants offer the following arguments on appeal: (1) that the trial court wrongly determined that Haberfeld did not have a duty to disclose his religious and cultural affiliations; (2) that the trial court should have permitted defendants to take Haberfeld's deposition; and (3) that the trial court erred by not providing a statement of decision. All three arguments are patently without merit.

*Arbitrator's Duty to Disclose*

In an effort to sort our way through defendants' arguments, which are rife with logical fallacies and inconsistencies, we begin with the pertinent law. An appeal from the trial court's confirmation of an award challenged due to the arbitrator's alleged failure to disclose circumstances creating an appearance of partiality presents a mixed question of law and fact. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384–385 [112 Cal.Rptr.3d 853, 235 P.3d 152] (*Haworth*).) Our review is de novo. (*Id.* at p. 385.)

■ Section 1281.9, subdivision (a) requires an arbitrator to "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ." Section 1286.2, subdivision (a)(6), provides that vacation of an arbitration award is required if an arbitrator fails to disclose a ground of disqualification of which the arbitrator was then aware. ■ " 'Impartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind.' [Citation.]" (*Haworth, supra,* 50 Cal.4th at p. 389.) " 'The party claiming bias bears the burden of establishing facts supporting its position. [Citation.]' " (*Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 957 [51 Cal.Rptr.3d 903].) Thus, the question is whether Haberfeld's family background and associations could cause a reasonable person to entertain a doubt as to his ability to be impartial.

In *Haworth*, the California Supreme Court addressed the application of this standard. In that case, the claimant filed an arbitration case against her doctor for negligence in performing cosmetic surgery on her face. (*Haworth, supra,* 50 Cal.4th at p. 378.) Ten years earlier, one of the arbitrators, then a judge, had been publicly censured for engaging in demeaning and sexually suggestive conduct towards women. (*Id.* at p. 377.) He had " 'on several occasions made sexually suggestive remarks to and asked sexually explicit questions of female staff members; referred to a staff member using crude and demeaning names and descriptions and an ethnic slur; referred to a fellow jurist's

physical attributes in a demeaning manner; and mailed a sexually suggestive postcard to a staff member addressed to her at the courthouse.' " (*Id.* at pp. 378–379.) The claimant lost the arbitration and later brought a petition to vacate, arguing that the arbitrator had failed to disclose this censure. (*Ibid.*)

■ "At issue in the present case is the requirement that an arbitrator disclose 'all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial.' [Citation.] An arbitrator's duty to disclose arises under the same circumstances that give rise to a judge's duty to recuse, that is, if '[f]or any reason . . . [¶] . . . [¶] . . . [a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial.' [Citation.] As noted above, because the standard for disclosure by a neutral arbitrator under section 1281.9, subdivision (a) is the same as the standard for disqualification of a judge under section 170.1, subdivision (a)(6)(A)(iii), case law applicable to judicial disqualification is relevant to the present case." (*Haworth, supra,* 50 Cal.4th at pp. 388–389.)

The Supreme Court then clarified the standard to use in determining whether disclosure is required. "In the context of judicial recusal, '[p]otential bias and prejudice must clearly be established by an *objective standard.*' [Citations.] 'Judges, like all human beings, have widely varying experiences and backgrounds. Except perhaps in extreme circumstances, those not directly related to the case or the parties do not disqualify them.' [Citation.]" (*Haworth, supra,* 50 Cal.4th at p. 389, italics added.) " 'The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer." ' [Citation.] '[T]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard.' [Citations.]" (*Ibid.*)

■ Thus, the relevant inquiry is not whether the arbitrator's background might have led defendants to question his ability to be impartial, but whether a person aware of the facts might have reasonably so believed. The court in *Haworth* found that "nothing in the public censure would suggest to a reasonable person that [the arbitrator] could not be fair to female litigants, either generally or in the context of an action such as the one now before us." (*Haworth, supra,* 50 Cal.4th at p. 390.) Thus, the Supreme Court found that the arbitrator had no duty to disclose the censure. "A person aware of all the circumstances of [the arbitrator]'s public censure—including this court's conclusion that there was no evidence suggesting that he acted with any intent to harm or that any of his misconduct involved litigants before the court—could not reasonably entertain a doubt concerning his ability to be fair to female litigants even at the time his misconduct involving court personnel

took place. Even less so could a reasonable person conclude that [the arbitrator] was unaffected by the discipline imposed and could not be fair to female litigants at the time of the arbitration proceeding—at least in the absence of any evidence of gender bias on his part in the intervening 10 years following the public censure." (*Id.* at p. 391.)

The facts in this case are even starker. There was nothing at all in Haberfeld's professional record that indicated bias toward Germans (or anyone else). Defendants do not rely on anything Haberfeld said or did, merely his family's history and his involvement with the 1939 Club. Further, Haberfeld's background was entirely irrelevant to the commercial case before him. This case had nothing to do with World War II, and nothing to do with the Holocaust.[6] No facts were presented that would support a reasonable belief that Haberfeld was not impartial. The background of Rohde and his family and Haberfeld's family were irrelevant. Further, Rohde's family background was unknown to Haberfeld at the time of the arbitration.

 The Supreme Court in *Haworth* emphasized that " '[a]n impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason.*' [Citation.]" (*Haworth, supra,* 50 Cal.4th at p. 389.) Defendants have failed to meet their burden to demonstrate that any *"disinterested objective observer"* (*ibid.*) could harbor a doubt about Haberfeld's impartiality sufficient to trigger his duty to disclose. The facts simply do not support their argument, and defendants fail to distinguish *Haworth* or to cite any other relevant cases.

We conclude our discussion on this issue with two observations. First, the information regarding Haberfeld's background was available to defendants before the arbitration commenced. The supposedly relevant information regarding Haberfeld that defendants "found" was dated earlier than 2007. If defendants were concerned about the cultural or religious affiliations of their arbitrator, or anything else about his background, they should have done their "Googling" before the arbitration began. " '[I]t is inappropriate to allow any party to "trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable." [Citation.]' " (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 800 [99 Cal.Rptr.3d 464].) At oral argument, defense counsel argued that "If Arbitrator Haberfeld were an Orthodox Jew with outward characteristics that would have disclosed who he was, my clients' right to inquire would have been triggered. It's that kind of

---

[6] We do not imply that if this case did have something to do with the Holocaust or World War II, then disclosure would automatically be required. Such facts are not before us.

disclosure that is necessary to be advanced by this court."[7] We very much disagree. In addition, if one party harbors such a concern about the background of a group of potential arbitrators, as unmeritorious as it is, that party should not sit back and wait before performing even minimal due diligence (such as an Internet search) only to raise the issue when an unfavorable outcome results. In any event, the facts here support the conclusion that defendants only developed such a concern after they lost and began looking for any reason to avoid the unfavorable result.

■ Second, we reject the tacit assumption that runs through defendants' argument and through similar arguments in judicial recusal cases. This argument implies that a judge who is a member of a minority group cannot be fair when a case somehow related to that minority status—no matter how remote or tenuous that relationship might be—comes before that judge. A judge or arbitrator's impartiality should never be questioned simply because of who he or she is. "The fact that an individual belongs to a minority does not render one biased or prejudiced, or raise doubts about one's impartiality: 'that one is black does not mean, *ipso facto*, that he is anti-white; no more than being Jewish implies being anti-Catholic, or being Catholic implies being anti-Protestant.' " (*U.S. v. Alabama* (11th Cir. 1987) 828 F.2d 1532, 1542, fn. omitted.)

■ While defendants purport to rely on Haberfeld's 1939 Club involvement and family history, they use these factors as a proxy for arguing that Haberfeld should have disclosed that he is Jewish and of German ancestry. Rohde states as much in his declaration—two of the three factors he points to are Haberfeld's religious and cultural affiliations. To satisfy Rohde, Haberfeld would have been required to disclose his religion and cultural identity as well as his involvement in the 1939 Club, even though both parties were German and the case had nothing whatsoever to do with World War II. Indeed, Rohde asserts, without adequate factual support, that Haberfeld conducted the arbitration in a manner intended to "punish me for the harms brought on his family."

Unsurprisingly, we find the court did not err by confirming the arbitration award. Defendants' arguments are patently without merit.

### Deposition of Arbitrator

Defendants' second meritless argument is that Judge Luesebrink erroneously sustained Haberfeld's motion to quash their deposition subpoena.

---

[7] He further argued: "Well, an Orthodox Jew or a Hasidic Jew would have the hairstyle, the beard, the . . . yarmulke, those kinds of things that would communicate his Jewishness and trigger the duty to inquire as to his history."

Plaintiffs point out, apparently correctly, that defendants did not serve the notice of appeal or the briefs in this case on Haberfeld or his attorney. We agree with plaintiffs that as a matter of fundamental due process, Haberfeld should have been a party to this appeal if defendants wished to raise the issue. We therefore reject defendants' argument as a procedural matter.

Were we inclined to consider the merits, such as they are, defendants' contentions would be rejected in any event. As defendants point out, an arbitrator's deposition may be taken if the information sought is relevant to "a *statement* or *conduct* that could . . . give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure." (Evid. Code, § 703.5, italics added.) This case does not involve any "statement" or "conduct" by the arbitrator; it involves his identity and family history. And as we discussed *ante*, the arbitrator was not required to disclose facts relating to his identity or family history because they do not meet the required standard for disclosure. Defendants fail to cite a single case in which an arbitrator's deposition was permitted in such circumstances. Thus, even if Haberfeld were properly before this court, we would reject defendants' arguments on this point.

*Statement of Decision*

Finally, defendants claim they are entitled to a statement of decision on the court's decision to confirm the arbitration award and deny their counterpetition to vacate. Whether a statement of decision is required is governed by section 632, which states, in pertinent part: "The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues *at trial* upon the request of any party appearing at the *trial*. The request must be made within 10 days after the court announces a tentative decision unless the *trial* is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision." (Italics added.)

Defendants argue that by "using the word 'trial' in the statute, the California legislature has indicated a clear desire that, when it takes more than one day (or more than eight hours over several days) to determine the merits of the underlying dispute, a party has ten days from the date of the tentative decision to request a Statement of Decision." Defendants are wrong. By using the word "trial" in the statute, the Legislature intended that a statement of decision is available only when the court conducts a *trial*. It is irrelevant that the arbitration took seven days (or three years); what is relevant is the length of the trial, if there is one. In this case, there was not, and as such, they are not entitled to a statement of decision regardless of when they requested it.

A petition to confirm or vacate an arbitration award is not a trial, it is a law and motion proceeding, and therefore not subject to section 632. Defendants fail to cite any case stating otherwise. And while defendants claim that such an interpretation is "hyper-technical," we find it to be consistent with the plain language of the statute. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 444 [79 Cal.Rptr.3d 312, 187 P.3d 37] ["If the language is clear and unambiguous, the plain meaning governs."].) The repeated use of the word "trial" renders section 632 quite clear and unambiguous. Their argument is, therefore, without merit.

## III

## DISPOSITION

The judgment is affirmed. Plaintiffs are entitled to their costs on appeal.

Fybel, J., and Ikola, J., concurred.

A petition for a rehearing was denied July 14, 2011, and appellants' petition for review by the Supreme Court was denied September 14, 2011, S195271.