Filed 12/16/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MALEK MEDIA GROUP LLC, | B299743 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC128419) |
| v. | |
| AXQG CORP., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Harry Jay Ford III, Judge.  Affirmed.

Law Offices of Jeffrey S. Konvitz and Jeffrey Konvitz for Plaintiff and Appellant.

Eisner and Jeremiah Reynolds for Defendant and Respondent.

——————————

Malek Media Group, LLC (MMG) appeals from a judgment confirming an arbitration award in favor of AXQG, Corp. (AXQG). MMG contends the arbitration award must be vacated because the arbitrator failed to disclose his prior affiliation with an LGBTQ rights organization, GLAAD, and failed to consider material evidence. For the reasons stated below, we affirm the judgment and grant AXQG's motion for sanctions.

## BACKGROUND

AXQG and MMG agreed to start a film production company, Foxtail Entertainment, LLC (Foxtail). Anita Gou owns AXQG. MMG's principal is Matthew Malek. AXQG and MMG adopted a limited liability company agreement that governed their relationship and formed Foxtail (the Foxtail agreement).

Shortly after forming Foxtail, the relationship between Gou and Malek soured. Malek routinely breached the Foxtail agreement by withdrawing Foxtail funds in excess of $1,000, including individual withdrawals up to $60,000, without AXQG's authorization and over Gou's objections.[1] Malek attempted to satisfy a personal debt by promising to invest Foxtail funds in a third party venture and, unbeknownst to Gou, entered into a separate agreement to produce another film while depriving Foxtail of an ownership interest. Malek had also sent sexually explicit text messages to a prospective employee and his temporary assistant, Francesca Salafia. Salafia informed Gou of the text messages, stating that Malek had pressured her to engage in inappropriate behavior and that Malek was "tarnishing

---

[1] Pursuant to the Foxtail agreement, withdrawals over $1,000 required Gou's consent.

[Salafia's] name and hindering leads for other opportunities of work."

Gou ultimately sought to terminate her business relationship with Malek after he made an individual withdrawal of $40,000 of Foxtail funds over her express objection. AXQG filed a demand for arbitration with JAMS. The core of AXQG's case was the contention that Foxtail could no longer operate as intended because Malek and Gou were irreconcilably alienated and deadlocked from working in a productive manner. AXQG's demand also alleged various claims against Malek and MMG for breach of fiduciary duty, fraud, and breach of the Foxtail agreement. MMG and Malek counterclaimed for breach of contract, breach of fiduciary duty, conversion, fraudulent concealment, and declaratory relief.[2]

The parties selected Ambassador David Huebner (Ret.) as arbitrator. The arbitrator had a decorated career as a diplomat and 25 years of experience handling complex commercial arbitrations. The parties did not question or comment on the arbitrator's fitness to preside over the proceedings. The arbitration was lengthy and hard fought, lasting seven days with 17 witnesses and over 800 exhibits. The arbitrator issued a

---

[2] Shortly thereafter, MMG and Malek filed an unverified complaint in Los Angeles Superior Court against AXQG's counsel, AXQG, Gou, Salafia and others, for civil extortion, tortious interference with contractual relations, conspiracy, defamation, intentional infliction of emotional distress and breach of contract. MMG's complaint alleged that AXQG, Gou, and others who had witnessed Malek's misconduct, engaged in an elaborate conspiracy against him. The trial court stayed the case pending completion of the arbitration.

3

comprehensive 96-page final award detailing his findings and conclusions.

The arbitrator found in favor of AXQG on its claims for breach of the Foxtail agreement and breach of fiduciary duty. The arbitrator gave AXQG the sole authority to wind down Foxtail's business in light of Malek's gross negligence, willful misconduct, and "propensity for destructive delay." AXQG was awarded its attorney fees and costs. MMG did not prevail on any of its counterclaims and the arbitrator noted that several of MMG's contentions appeared to be frivolous based on its failure to assemble a record of supporting evidence.

AXQG petitioned the trial court to confirm the award while MMG petitioned to vacate it. After the arbitrator issued the final award, Malek "commenced a deep-dive, internet search into [the arbitrator's] background." He found the GLAAD organization website which stated that the arbitrator had been a founding board member of GLAAD and its chief counsel decades ago. MMG argued that the arbitrator failed to disclose his background and "his self-proclaimed status as a gender, social, female and LBGTQ activist and icon, while facing a matter grounded in gender and social issues, particularly sexual harassment." Specifically, MMG asserted that the arbitrator was obligated to disclose his prior affiliation with GLAAD once made aware of Malek's Catholic background. MMG claimed that GLAAD was at odds with the Catholic Church after the passage of Proposition 8, which banned same-sex marriage in California. Thus, MMG asserted that GLAAD and the Catholic Church were antagonistic to each other and, by extension, the arbitrator against Malek, casting doubt on the arbitrator's impartiality.

4

MMG also argued that the arbitrator failed to hear or consider evidence, specifically, witness testimony from Stephen Epacs, an attorney who assisted Malek during the drafting of the Foxtail agreement; an exhibit consisting of a chain of emails produced by AXQG that MMG asserted were fraudulent, and improperly limited MMG's cross-examination of Salafia of how she thought Malek perceived her responses to his sexually explicit text messages.

The trial court summarily rejected MMG and Malek's arguments, confirmed the arbitration award, and entered judgment in favor of AXQG.

## DISCUSSION

MMG maintains the judgment must be overturned and the arbitration award vacated because the arbitrator violated Code of Civil Procedure[3] section 1286.2 by failing to disclose his prior affiliation with GLAAD; committed fraud and misconduct; and refused to hear evidence material to the controversy. We find MMG's arguments meritless and its appeal frivolous. We therefore affirm the judgment and award sanctions in favor of AXQG.

I.     Requests for judicial notice

MMG filed two requests for judicial notice on March 26 and May 11, 2020.

MMG requested judicial notice of (1) "the existence of the *#MeToo* movement" and the phrase "a woman alleging sexual harassment must be believed"; (boldface and italics omitted)

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

(2) GLAAD press releases; (3) rules promulgated by Twitter concerning the company's verified user accounts; (4) screen-captured tweets from the arbitrator's verified Twitter account; (5) exhibits that MMG attached to its petition to vacate the final award in the trial court; (6) JAMS Comprehensive Rules and Procedures; and (7) a portion of the arbitration evidentiary hearing transcript.

As a reviewing court, we are obligated by Evidence Code section 451 to take judicial notice of some matters and are given discretion under Evidence Code section 452 to take judicial notice of others. Proper subjects for judicial notice are facts and propositions that "are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute" or "not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subds. (g), (h).) Any matter to be judicially noticed must be relevant to a material issue. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.) MMG's requests are neither appropriate subjects for judicial notice nor relevant to the issues here.

MMG requested judicial notice of the *#MeToo* movement and the phrase *a woman alleging sexual harassment must be believed*. MMG failed to provide sufficient evidence or explanation that the *#MeToo* movement and the phrase *a woman alleging sexual harassment must be believed* are facts of such generalized knowledge that they cannot reasonably be the subject of dispute. (See Evid. Code, § 451, subd. (f).) MMG asserts that "one would be hard pressed to find an adolescent or adult who has not heard of the *#Me Too* movement and understands what it

6

stands for in the United States." This, however, does not make the existence of a contemporary social movement the proper subject of judicial notice. By their very nature, social movements do not have defined boundaries and their scope, meaning, and influence are subjects of debate is the subject of debate for years after they emerge.

Next, MMG requested judicial notice of various press releases from GLAAD's website concerning an awards dinner hosted by the organization and a webpage describing one of GLAAD's anti-discrimination campaigns. MMG asserted that these materials show a connection between GLAAD and the *#MeToo* movement, and thus, by extension, show a "kinship" between the arbitrator and the *#MeToo* movement. But these materials fail to show a connection between the arbitrator and GLAAD, the *#MeToo* movement, or GLAAD's anti-discrimination campaign. MMG admits that it does not even know if the arbitrator was at the awards dinner or whether he had any involvement in GLAAD's campaign. The materials are irrelevant.

MMG also requested judicial notice of screenshots of Twitter posts purportedly from the arbitrator's Twitter account. According to MMG, these posts show the arbitrator's perspective on "white privilege, men, religion, abuse of women and anything that does not comport with [the arbitrator's] social justice view of the world." Therefore, they show the arbitrator's inability to act impartially in a case involving a Catholic white male accused of sending sexually explicit texts to a prospective employee. However, the tweets are irrelevant to his disclosure obligations

because the arbitration had nothing to do with social justice, religion, white privilege, or gender.

MMG requested that we take judicial notice of an extract from the evidentiary hearing during the arbitration. However, MMG has not described why this portion of the transcript is relevant to its appeal. The transcript shows a brief exchange between MMG's counsel and the arbitrator regarding a discovery issue and MMG's decision not to call an MMG witness, Carson Ulrich, who also served as MMG's counsel's litigation assistant. MMG does not claim that the arbitrator refused to hear Ulrich's testimony or that Ulrich's testimony is relevant to its argument regarding the arbitrator's disclosure obligations. This portion of the transcript is therefore irrelevant to the matters at issue in this appeal.

MMG requested judicial notice of the JAMS Comprehensive Rules and Procedures because MMG referenced them in its briefs. Once again, MMG failed to explain the relevance of its request. MMG's opening brief cites to JAMS rule 22(d), which allows the arbitrator to limit evidence if it is unduly repetitive or immaterial. MMG also cites JAMS rule 15(i) which allows a party to challenge the arbitrator for cause. The exhibits consist of a picture of the arbitrator, a list of his lectures and publications, a short biography of the arbitrator, an article from 2010 honoring the arbitrator and stating that he was a founding board member and chief counsel for GLAAD, and an article authored by the Catholic News Agency criticizing a GLAAD media guide that was released in anticipation of a visit from the pope directing media outlets to promote certain Catholic groups that supported LGBTQ rights and to scrutinize other Catholic leaders who did not . MMG asserts the exhibits are relevant to

8

show the arbitrator's background, the relationship between LGBTQ rights, the *#MeToo* movement, and "GLAAD's adverse relationship with the Catholic Church."

The lack of relevance or authentication of these exhibits notwithstanding, MMG has plainly offered them for the truth of their contents. This is not a proper use of judicial notice. At most, we could judicially notice the existence of the press releases, but not the truth of their contents (see *Unlimited Adjusting Group, Inc. v. Wells Fargo Bank, N.A.* (2009) 174 Cal.App.4th 883, 888 fn. 4), which are "plainly subject to interpretation and for that reason not subject to judicial notice" (*L.B. Research & Education Foundation v. UCLA Foundation* (2005) 130 Cal.App.4th 171, 180, fn. 2).

Accordingly, we deny MMG's requests for judicial notice filed on March 26 and May 11, 2020.

II.     The arbitrator was not required to disclose his prior relationship with GLAAD.

"The California Arbitration Act (§ 1280 et seq.) 'represents a comprehensive statutory scheme regulating private arbitration in this state.' [Citation.] The statutory scheme reflects a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citation.] '[I]t is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final.' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 380 (*Haworth*).) However, a party may seek judicial review when there are " 'serious problems with the award itself, or with the fairness of the arbitration process.' " (*Ibid*.)

Our review, however, is limited. The only grounds for judicially vacating an arbitration award are set by statute.

9

(*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 27–28.)  Those grounds are in section 1286.2, subdivision (a), which requires the trial court to vacate the award if it determines that:  (1) the award was procured by corruption, fraud or other undue means; (2) there was corruption in any of the arbitrators; (3) the rights of the party were substantially prejudiced by misconduct of a neutral arbitrator; (4) the arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision; (5) the rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing or by the refusal of the arbitrators to hear evidence material to the controversy; or (6) the arbitrator failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware or was subject to disqualification upon grounds specified in section 1281.91.

Section 1281.91, subdivision (a) provides for arbitrator disqualification if he or she fails to comply with section 1281.9.  In turn, section 1281.9, subdivision (a) requires arbitrators to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial."  Section 1281.9 provides a nonexhaustive list of matters to be disclosed (*Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 836), and includes, the "existence of any ground specified in Section 170.1 for disqualification of a judge," and "matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council' " (§ 1281.9, subdivision (a)(1), (2)).  Section 170.1, subdivision (a)(6)(A)(iii) mandates disqualification when a "person aware of the facts

might reasonably entertain a doubt that the judge would be able to be impartial."

The ethics standards for neutral arbitrators directs arbitrators to disclose, among other things, "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial, including but not limited to, . . . [¶] . . . [¶]  (15) Any other matter that:  [¶] (A) Might cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial."  (Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, std. 7(d)(15)(A), italics omitted.)

Courts apply an objective test in determining whether under section 1281.9, subdivision (a) neutral arbitrators must disclose matters that could reasonably cause a person aware of the facts to entertain a doubt that the proposed arbitrator would be impartial.  (*Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1311.)  The "objective test . . . focuses on a reasonable person's perception of bias and does not require actual bias."  (*Ibid.*)  Accordingly, we are not concerned with the subjective question of whether the arbitrator was actually biased, but whether an objective, reasonable person aware of the facts reasonably could entertain a doubt that he could be impartial in the case.  (*Haworth*, *supra*, 50 Cal.4th at pp. 385–386.)

The reasonable person under this objective test " 'is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer." ' [Citations.]  '[T]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer*

11

whose doubts concerning the judge's impartiality provide the governing standard.' [Citations.] [¶] 'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason.*' " (*Haworth*, *supra*, 50 Cal.4th at p. 389.) In this context, " '[i]mpartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind.' " (*Ibid*.) The "appearance-of-partiality 'standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." ' " (*Ibid*.)

When the facts are not in dispute, whether an arbitrator was required to disclose particular information involves the application of the disclosure rule to the undisputed facts. Our review of this mixed question of law and fact is de novo. (*Haworth*, *supra*, 50 Cal.4th at pp. 384–385.)

MMG's arguments that the arbitrator was required to disclose his prior relationship with GLAAD are strained and convoluted to say the least. According to MMG, the arbitrator founded GLAAD, which MMG characterizes as a "militant, . . . social justice organization" that "engaged in civil warfare against Malek's Catholic church." Next, MMG connects GLAAD with the *#MeToo* movement, asserting that both GLAAD and supporters of that social movement adhere to the mantra, *a woman alleging sexual abuse has to be believed*. Thus, MMG posits, the arbitrator's prior affiliation with GLAAD actually prevented him from being impartial or, at least, would give a reasonable person aware of the facts cause to doubt the arbitrator's impartiality in a case that primarily involved "a

12

sexual harassment claim by a female against an observant male Catholic."

MMG mischaracterizes the arbitration as one that primarily involved issues of sexual harassment or social justice. The arbitration involved the dissolution of Foxtail based on the irreconcilable conflict between Malek and Gou and the numerous breaches by Malek of the Foxtail agreement, primarily, Malek's misuse of Foxtail funds. While there were substantiated allegations that Malek sent sexually explicit messages to a prospective employee, they were only relevant to the extent that they exposed Foxtail to reputational harm and potential litigation. The arbitrator noted that there was no need to determine whether the prospective employee could state a claim for sexual harassment against Malek as she was not a party to the arbitration. Rather, the arbitrator focused on the potential that Malek's actions had for exposing Foxtail to litigation. The arbitrator awarded AXQG nominal damages in the amount of $500 for this claim.

MMG's absurd arguments based on a mischaracterization of the underlying dispute expose MMG as a partisan litigant emotionally involved in the controversy and confirm that it is not a disinterested objective observer as set forth in *Haworth*, *supra*, 50 Cal.4th at page 389. "The arbitrator cannot reasonably be expected to identify and disclose all events in the arbitrator's past, including those not connected to the parties, the facts, or the issues in controversy, that conceivably might cause a party to prefer another arbitrator. Such a broad interpretation of the appearance-of-partiality rule could subject arbitration awards to after-the-fact attacks by losing parties searching for potential disqualifying information only after an adverse decision has been

13

made. [Citation.] Such a result would undermine the finality of arbitrations without contributing to the fairness of arbitration proceedings." (*Id.* at pp. 394–395.) Just as *Haworth* predicted, MMG's position would encourage parties to include unrelated testimony on controversial or partisan topics for the sole purpose of manufacturing a claim that the arbitrator was biased against those beliefs and thus could not act impartially.

*Rebmann v. Rohde* (2011) 196 Cal.App.4th 1283 is instructive. In *Rebmann*, a company controlled by descendants of German army officers who served during World War II lost a commercial arbitration. Thereafter, the company performed an extensive internet search on the arbitrator's background because "[s]omething did not smell right." (*Id.* at p. 1288.) The company discovered that the arbitrator lost family in the Holocaust and was affiliated with a club dedicated to avoiding a repeat of the Holocaust (*Ibid.*) The company sought to vacate the award based on the arbitrator's failure to disclose this part of his background. (*Ibid.*) *Rebmann* concluded that the arbitrator was not required to disclose these facts or his religious background because they had nothing to do with the commercial case before him. (*Id.* at p. 1292.) *Rebmann* also rejected the argument that the arbitrator's association with a minority group could serve as a basis to question his impartiality. (*Id.* at pp. 1292–1293.)

Like *Rebmann v. Rohde*, *supra*, 196 Cal.App.4th 1283, MMG's belated discovery of the arbitrator's prior association with GLAAD is insufficient to raise questions regarding his impartiality in a commercial case involving a Catholic litigant. If the arbitrator in *Rebmann* had no duty to disclose his connections to the Holocaust and Judaism to litigants who were descendants of German army officers because those issues were irrelevant to

14

any matter in the case, then the arbitrator here had no obligation to disclose *his* affiliation with GLAAD to MMG because the arbitration did not concern LGBTQ or religious rights.  (See *id.* at pp. 1292–1293.)

Despite its assertions to the contrary, MMG cannot show that the arbitration had anything to do with LGBTQ issues, GLAAD, religion, or the Catholic Church.  This is because the arbitration primarily concerned misappropriation of corporate funds, entering into agreements that conflicted with Malek's role as the manager of Foxtail, and exposing Foxtail to reputational harm and litigation costs.  MMG has manufactured a connection with Malek's Catholic faith through his biographical testimony that he studied for the Catholic priesthood and that he was later involved with Catholic charities at some point prior to forming Foxtail.  MMG cannot credibly argue that the arbitrator was required to disclose his affiliation with GLAAD because Malek chose to testify about his Catholic faith when that information was irrelevant to the present dispute over his managerial misconduct.

MMG's convoluted argument reveals itself to be that of a hypersensitive or unduly suspicious litigant rather than a well-informed, thoughtful observer.  (See, e.g., *Haworth, supra*, 50 Cal.4th at p. 389.)  We therefore reject any contention that the

15

arbitrator was required to disclose his past affiliation with GLAAD.

III.   The arbitrator did not fail to hear evidence

MMG also argues that the arbitration award should be vacated because the arbitrator failed to hear evidence material to the final award.

An arbitration award may be vacated if a party's rights were substantially prejudiced by the refusal of the arbitrator to hear evidence material to the controversy.  (§ 1286.2, subd. (a)(5).)  "When a party contends it was substantially prejudiced by the arbitrator's exclusion of material evidence, a court should generally consider prejudice before materiality.  [Citation.]  To find substantial prejudice, the court must first accept the arbitrator's theory and conclude the arbitrator might well have made a different award had the evidence been allowed."  (*Epic Medical Management, LLC v. Paquette* (2015) 244 Cal.App.4th 504, 518.)

MMG asserts that the arbitrator (1) disallowed one of MMG's witnesses, Stephen Epacs, from testifying; (2) prevented MMG's counsel from cross-examining Salafia on how she perceived Malek's sexually explicit text messages; and (3) excluded an exhibit that included a chain of emails that MMG argued had been doctored by AXQG and its counsel.

A.    *Epacs's testimony*

MMG speculates that the arbitrator made a calculated decision to exclude MMG's witness, Epacs.

However, MMG has not cited to anything in the record showing that it attempted to call Epacs as a witness.  If MMG believed Epacs was a material witness, MMG's counsel had a

16

duty to preserve that issue for appeal. (See *Nienhouse v. Superior Court* (1996) 42 Cal.App.4th 83, 93–94.) Instead, we are left with hearsay statements from MMG's counsel, Malek, and Ulrich that the arbitrator said he would not hear Epacs's testimony in an off-the-record conversation. MMG's self-serving hearsay statements are insufficient to show that it attempted to call Epacs as a witness. Therefore, there is no basis in the record for the contention that the arbitrator refused to hear his testimony.

### B. *MMG's cross-examination of the prospective employee*

MMG argues that the arbitrator cut off its counsel's cross-examination of Salafia with respect to at least 50 questions regarding her responses and perceptions of her text exchanges with Malek. Again, MMG has not presented any factual support for this argument. MMG cites to a portion of the arbitration transcript where the arbitrator warned MMG's counsel that he should "tread very carefully on this topic," because it was "a difficult situation" which MMG could "only make worse." After the warning, MMG's counsel continued to cross-examine Salafia regarding the text exchanges between herself and Malek. Thus, the record does not support MMG's contention that the arbitrator "shutdown" its counsel's line of questioning. If MMG's counsel believed that the warning effectively deprived MMG of soliciting material testimony, it had a duty to preserve that issue accordingly by, for example, making a proffer, on the record, about the relevance of its unasked questions. Therefore, MMG's argument on this point fails because it cannot show what evidence was excluded.

The lack of support in the record notwithstanding, MMG's argument still fails because as the arbitrator noted, Salafia's

17

interpretation of Malek's text messages had no effect on the final award. "There is no need to parse and decide each point of conflict between the testimony of . . . Salafia and . . . Malek, nor to rule on whether sexual harassment under a particular body of law has been proven under the standards established therein. . . . [AXQG]'s contention is that . . . Malek breached his fiduciary duties as president of Foxtail by engaging in activity with a prospective employee that could expose Foxtail to significant litigation costs and reputational damage, and that MMG, by virtue of those actions of its principal, breached the Agreement and its fiduciary duties to AXQG." (Fn. omitted.) Thus the arbitrator concluded that the evidence was sufficient to establish that MMG and Malek exposed Foxtail to risk of significant reputational harm, litigation expense, and potential damages by reason of Malek's behavior. Additional testimony on the merits of a potential sexual harassment claim by Salafia was therefore immaterial to the arbitrator's final award.

C. *Exhibit*

Lastly, MMG asserts that the arbitrator failed to hear evidence on the authenticity of an exhibit consisting of a chain of emails. MMG contends the exhibit was fabricated by AXQG and its counsel and thus would have called into question AXQG's entire case. Again, this contention is not supported by the record.

AXQG produced the exhibit seven months before the hearing and introduced it into evidence on the first day of the hearing during the direct examination of Gou. MMG did not object to the exhibit until the last day of the hearing. MMG's counsel claimed to have presented Malek with the exhibit three days earlier to which Malek asserted that he had never seen the emails before and that they were "not real." Despite MMG's

18

contentions that this exhibit was "one of the most important exhibits in the entire case" and having that information prior to Malek's testimony, MMG's counsel never asked Malek anything about the exhibit on the record. Nevertheless, the arbitrator ordered the parties to meet and confer on the exhibit's authenticity. MMG accused of AXQG of spoliating evidence, claiming that the chain of emails had been manipulated and assembled from other emails that Malek and "cyber security experts" had determined were "removed," "stolen," and "manipulated" from Malek's computer in "the middle of the night" and sent to Gou. MMG sent the arbitrator a three-page explanation of how each part of the email chain had supposedly been manipulated to show that the exhibit was fraudulent.

After considering MMG's theory of AXQG's alleged spoliation of evidence, the arbitrator issued a separate order laying out his conclusions on the matter. MMG offered no credible explanation for why it failed to review the exhibit until the hearing was well underway or why it failed to ask Malek or any other witness about its authenticity despite having multiple opportunities to do so. The arbitrator stated that MMG's allegations of fabrication of evidence, hacking of computers, and theft of electronic or physical documents lacked any credible support, diligent follow up, or proper evidentiary submission. The arbitrator found that MMG had not established sufficient grounds for holding an evidentiary hearing on the authenticity of the exhibit or that it was anything but what it purported to be. The arbitrator ultimately struck the exhibit from the record, without opining on its authenticity in the final award.

Again, MMG's argument that the arbitrator did not consider the authenticity of the exhibit is completely unsupported

19

by the record.  The arbitrator did hear evidence regarding the exhibit, considered it, but disagreed with MMG's conclusion that it carried any weight or impeached the credibility of AXQG's witnesses' testimony or documentary evidence.

We conclude the arbitrator did not fail to hear evidence, and therefore affirm the trial court's order denying MMG's petition to vacate the arbitration award.[4]

VI.    Motion for sanctions

AXQG moved to sanction MMG and its counsel, Jeffrey S. Konvitz, in the amount of $56,000[5] for filing a frivolous appeal based on the following grounds:  (1) MMG's appeal is objectively frivolous, (2) MMG's appeal is subjectively frivolous, and (3) MMG's briefing has violated multiple rules governing appellate practice, including failing to support the factual statements with proper cites to the record.  (See § 907, Cal. Rules

---

[4] MMG's briefing also contains a section titled "Actual Bias" that purports to be an additional ground for reversal.  (Boldface and underscore omitted.)  However, MMG's contentions under that heading are either repetitions of its other arguments for the arbitrator's disclosure or his purported failure to hear evidence. To the extent they are not retreads of those arguments, MMG's contentions are stated as disagreements with the arbitrator's conclusions and findings, which it concedes are not the subject of this appeal.

[5] The sum of $56,000 is comprised of $46,000 in attorney fees and costs incurred by AXQG in opposing MMG's appeal and requests for judicial notice as well as its motion for sanctions.

20

of Court, rule 8.276(a)(1).)  We advised MMG and its counsel that we were considering sanctions for filing a frivolous appeal.

Sanctions may be imposed for frivolous appeals where the appeal was prosecuted for an improper motive or the appeal indisputably has no merit.  (§ 907;Cal. Rules of Court, rule 8.276(a)(1).)  To determine whether an appeal is frivolous, we apply both a subjective standard, examining the motives of appellant and its counsel, and an objective standard, analyzing the merits of the appeal.  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649–650.)  A finding of frivolousness may be based on either standard by itself, but the two tests are ordinarily used together, with one sometimes providing evidence relevant to the other.  (*Ibid*.)

"Courts have struggled to apply . . . section 907.  [Citation.] On the one hand, the statute should be used to compensate for a party's egregious behavior, and to deter abuse of the court system and the appellate process.  [Citations.]  On the other hand, sanctions should not be awarded simply because an appeal is without merit.  Indiscriminate application of section 907 could deter attorneys from vigorously representing their clients, and deter parties from pursuing legitimate appeals."  (*Computer Prepared Accounts, Inc. v. Katz* (1991) 235 Cal.App.3d 428, 434.)

An appeal is considered objectively frivolous " ' "when any reasonable attorney would agree that the appeal is totally and completely without merit." ' "  (*In re Marriage of Schnabel* (1994) 30 Cal.App.4th 747, 754.)  We look to the merits of the appeal from a reasonable person's perspective.  The inquiry is not whether counsel acted in the honest belief it had grounds for appeal, but rather would any reasonable person agree that the appeal is completely devoid of merit, and thus frivolous.  (*Doran*

21

*v. Magan* (1999) 76 Cal.App.4th 1287, 1296.) An appeal may be objectively frivolous if there is already a legal authority "addressing the precise issue . . . raised" (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 31), or when appellant's arguments rest on negligible legal foundation (*Kurokawa v. Blum* (1988) 199 Cal.App.3d 976, 995–996). An appeal is totally devoid of merit where there are "no unique issues, no facts that are not amenable to easy analysis in terms of existing law, and no reasoned argument by [appellant] for an extension of existing law." (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1081.)

MMG's appeal is objectively and subjectively frivolous. MMG's appeal is objectively frivolous because it is devoid of factual or legal support. Its primary argument is that the arbitrator was required to disclose his prior relationship with an LGBTQ rights organization because that relationship would cause a reasonable person to question his impartiality in a commercial arbitration where one of the parties' principals was a white male Catholic. MMG's argument is based on a mischaracterization of the underlying arbitration as "headlining a major social justice issue" concerning sexual harassment between an employee and her boss. Not only has MMG failed to define what it believes are social justice issues, but the case was a commercial arbitration between co-owners of a film production company who sought to dissolve the company after their relationship became irreconcilable. Neither LGBTQ rights nor the Catholic Church have any connection to this case. Further, MMG has failed to support its alarmist characterization of GLAAD as a militant social justice organization or that the arbitrator was the organization's "ideological motor." Setting

22

aside its lack of relevance, MMG never connected GLAAD or Catholicism to the *#MeToo* movement in such a way that would give any reasonable person a basis to believe the arbitrator could not be impartial in a case involving a Catholic litigant.[6]

Moreover, MMG's requests for judicial notice lacked merit and ignored the rules of evidence, asking this court, for example, to judicially notice the *#MeToo* movement and the phrase *a woman alleging sexual harassment must be believed*. MMG's unreasonable requests reflect that its theory of this case lacked any merit. Indeed, MMG effectively admits that there was a tenuous connection between the facts of this case, GLAAD, the *#MeToo* movement, and the arbitrator when it says it spent "many weeks . . . investigating and discovering content to fill in the blanks once the arbitrator's connection [to] GLAAD was uncovered" because, according to MMG, all the "dots had to be connected." There were, however, no dots to connect. The Court of Appeal is not an appropriate forum to peddle far-fetched conspiracy theories, laced with sexism and homophobia,

---

[6] Despite MMG's insistence that GLAAD is an anti-Catholic organization that is "pitted heavily against the Catholic Church," MMG never discusses California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, standard 7(d)(14), which requires arbitrators to disclose their membership in "any organization that practices invidious discrimination on the basis of race, sex, religion, national origin, or sexual orientation." MMG's position, however, would effectively invert this disclosure requirement from requiring arbitrators to disclose their membership in groups that practice discrimination to disclosing their memberships in organizations that fight against it.

23

disguised as a legitimate appeal. Nor is it a forum to launch personal attacks against an arbitrator.

MMG's argument regarding the arbitrator's failure to hear evidence was also completely unsubstantiated in the record. MMG attempted to get around this fatal flaw by filing declarations that included potentially attorney-client privileged information and multiple levels of hearsay regarding what the arbitrator said off-the-record and what Malek said to his counsel. Judging from the arbitrator's award, MMG has a history in this dispute of making frivolous claims. As noted by the arbitrator, MMG "did not assemble a record to support its conspiracy theories" and that MMG's "hyperbolic characterizations . . . nefarious deeds, criminal acts, and pervasive persecution by dark forces impaired the credibility of . . . Malek's testimony."

Even had MMG established factual support for any of its claims, its appeal lacked any legal foundation. MMG did not cite to a single case requiring the type of disclosure that MMG advocated for here. MMG's attempt to distinguish *Rebmann v. Rohde*, *supra*, 196 Cal.App.4th 1283, which was directly on point, was based on unsubstantiated characterizations of the arbitrator and the issues presented at the arbitration. MMG failed to adhere to the standard in *Haworth*, *supra*, 50 Cal.4th at page 389, which laid out the criteria for disclosures, explaining that it is not based on the perspective of the unduly suspicious person or the partisan litigant.

Likewise, MMG's appeal is subjectively frivolous. Under the subjective test, an appeal is frivolous when " ' "it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment." ' " (*Personal Court*

24

*Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 191.) We look to the subjective good faith of the appellant and counsel. (*In re Marriage of Flaherty*, *supra*, 31 Cal.3d at p. 649.) A complete lack of merit is evidence that the appellant brought the appeal for the purpose of delay. (*Id.* at pp. 649–650.)

MMG adopted a war-like mentality toward AXQG, its counsel, and anyone else involved with this case. The record is replete with personal attacks on Gou and AXQG's counsel, as well as numerous unsubstantiated claims that everyone who was purportedly against Malek and MMG was engaged in an elaborate conspiracy to destroy him. These included allegations that Gou orchestrated "an extensive conspiracy to 'crush' and 'destroy' [Malek], which conspiracy . . . included cybercrimes, safe-cracking, sexual espionage, manufactured evidence, the extensive suborning of perjury, and 'human chess pieces moving to create artificial breaches.' " But, as the arbitrator concluded, MMG "introduced no credible evidence to support its overarching conspiracy theory. The most charitable inference to be drawn from the record is that [MMG's] repeated insinuation of 'conspiracy' was a colloquial, rhetorical device intended to undermine the credibility of [AXQG] and its counsel. Setting charity aside, and considering the lack of competent supporting evidence in the record, it would appear that certain of the conspiracy contentions were frivolously asserted."[7]

Sanctions may be awarded against both an appellant and its counsel. (*In re Marriage of Schnabel*, *supra*, 30 Cal.App.4th at

---

[7] MMG's conspiracy theories grew to include the arbitrator as well. In its opening brief, MMG asserts without support that the arbitrator "wiped his social media accounts clean to prevent

25

p. 756.) Sanctions are appropriate when appellant's counsel had a professional obligation not to pursue the appeal or should have declined the case outright. (*Ibid*.) Sanctions against the party are appropriate when the record indicates the party benefitted from the delay or was otherwise involved in the bad faith conduct. (*Id.* at pp. 755–756.) The amount of sanctions is determined by looking to respondent's attorney fees on appeal, the judgment against the appellant, the degree of objective frivolousness and delay, and the need to discourage similar conduct in the future. (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 519.) Additionally, we may impose sanctions to compensate the court for the costs associated with processing, reviewing and considering the appeal. (*Young v. Rosenthal* (1989) 212 Cal.App.3d 96, 135–137.)

MMG and its counsel are equally culpable for pursuing this frivolous and bigotry-infused appeal. MMG's counsel had numerous opportunities to dismiss the appeal and to withdraw its baseless claims, but chose not to. Instead, MMG's counsel persisted in its efforts without any legal or factual support, filing wholly deficient briefs and nonsensical requests for judicial notice, supported by declarations from Malek and his counsel. As stated above, this court is not the forum for MMG or its counsel to rant about conspiracies or their politics. This court has wasted

_____

the discovery of material that might have imperiled his ability to remain the arbitrator." As AXQG correctly notes, to credit this theory as true, we would have to accept that the arbitrator jeopardized his distinguished diplomatic and legal career by fraudulently concealing any information about his association with GLAAD, for the sole purpose of issuing an award against MMG.

26

its time and resources considering MMG's appeal, which has only served as a drain on the judicial system and the taxpayers of this state.

## DISPOSITION

The judgment is affirmed.  Malek Media Group, LLC and Jeffrey S. Konvitz shall pay AXQG Corp. the amount of $46,000.  Malek Media Group, LLC and Jeffrey S. Konvitz are also assessed $10,000 in sanctions for bringing this frivolous appeal, payable to the clerk of this court no later than 15 days after the date of the remittitur is filed.  These obligations are joint and several.  The clerk of this court is directed to deposit said sum in the general fund.  Jeffrey S. Konvitz is also ordered to report the sanctions to the State Bar.  (Bus. & Prof. Code, § 6068, subd. (*o*)(3).)  The clerk of this court is directed to forward a copy of this opinion to the State Bar.  (Bus. & Prof. Code, § 6086.7, subd. (c).)

CERTIFIED FOR PUBLICATION.


DHANIDINA, J.


We concur:



LAVIN, Acting P. J.



EGERTON, J.


27